UNPUBLISHED

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.                                                                No. 96-4206

JOSEPH CRUM,
Defendant-Appellant.

Appeal from the United States District Court
for the District of Maryland, at Baltimore.
Benson E. Legg, District Judge.
(CR-94-384-L)

Submitted: November 12, 1996

Decided: December 6, 1996

Before WIDENER, MURNAGHAN, and MICHAEL, Circuit
Judges.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

Kenneth D. Auerbach, Silver Spring, Maryland, for Appellant. Lynne
A. Battaglia, United States Attorney, Katharine J. Armentrout, Assis-
tant United States Attorney, Baltimore, Maryland, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See
Local Rule 36(c).

**OPINION**

PER CURIAM:

Joseph Crum appeals his convictions for conspiracy to distribute powder and crack cocaine and possession of cocaine with intent to distribute. Finding no reversible error, we affirm.

Testimony at trial revealed that Crum led a drug ring that operated primarily out of Carver Hall, a housing project in Baltimore. Crum contracted with Donovan Dorsey to use Dorsey's home near Carver Hall as a stash house for the organization. Crum and other members of his organization went to the house each day to count drug proceeds and check on inventory.

Although Crum's workers already carried guns, Crum wanted more guns. Dorsey introduced Crum to Tyrone McLaughlin, who could purchase guns legitimately. McLaughlin supplied Crum with the guns he had ordered and then provided information about the organization to the police. During his dealings with Crum, McLaughlin had seen drugs and money in Dorsey's house and had witnessed at least one drug transaction there.

Law enforcement authorities had been investigating the Crum organization for some time prior to McLaughlin's contact with police. After McLaughlin provided the police with information about addresses used by members of the organization, police obtained search warrants for many of those locations, including Dorsey's home. Among the items recovered from the search were guns, crack cocaine, drug paraphernalia, and cash.

After the search of his home, Dorsey began to provide information to the police. He informed authorities that Crum travelled to New York by train to obtain fresh supplies of cocaine. Dorsey also told authorities about the vehicles that members of Crum's organization used.

Officers then set up surveillance around Carver Hall to watch for any of the vehicles Dorsey had identified. They followed one of the

cars, driven by Crum lieutenant Tyrone Watts, from the project to Penn Station in Baltimore. Watts picked up Crum and a female companion at the train station. Before Crum got into the car, officers saw him remove a jacket from a bag he was carrying. They noticed in the corners of the bags two objects which officers believed from experience might be packages of narcotics.

Watts and his passengers drove off. Officers decided to stop the vehicle based on their suspicion that it contained narcotics. Instead of pulling over, Watts led police on a high-speed chase through Baltimore. The chase ended only when Watts got caught in traffic. He, Crum, and a passenger bailed out but were later apprehended. Officers obtained a search warrant for the car and discovered two packages of cocaine.

The district court denied Crum's motion to suppress evidence seized during the search of the car. A jury convicted Crum, who now appeals his convictions.

Crum claims that the district court erred when it denied his motion to suppress. He contends that the officers lacked a reasonable suspicion that wrongdoing was afoot and that they therefore lacked authority to stop the car Watts was driving.

Officers are permitted to stop a vehicle if there exists a reasonable, articulable suspicion that criminal activity is occurring. United States v. Rusher, 966 F.2d 868, 875 (4th Cir.), cert. denied, 506 U.S. 926 (1992); see Terry v. Ohio, 392 U.S. 1, 27 (1968). Courts look at the totality of the circumstances to determine whether reasonable suspicion existed. United States v. Sokolow, 490 U.S. 1, 9 (1989).

In this case, there was ample reason to suspect that criminal activity was afoot. Officers had been investigating the Crum organization for several months. They had information that Watts was a key member of the organization and knew that he was driving a car associated with the organization. He drove from Carver Hall, where the drug ring conducted most of its business, to Penn Station. Officers knew that Crum traveled by train to New York to obtain drugs. Watts picked Crum up at the train station, and Crum held a bag that appeared to experienced officers to contain packages of narcotics.

3

Given these facts, there was ample reason to suspect that criminal activity was afoot, and there was no Fourth Amendment violation in this case.

Crum next asserts that the district court erred when it allowed certain testimony by Dorsey and McLaughlin. Because Crum did not object to these statements at trial, we review their admission for plain error. United States v. Olano, 507 U.S. 725, 731-32 (1993).

Under Fed. R. Evid. 801(d)(2)(E), a statement made by a co-conspirator of a defendant during the course and in furtherance of the conspiracy is not hearsay when it is offered against the defendant. To admit a co-conspirator's statement, the record must demonstrate that there was a conspiracy involving the declarant and the defendant and that the statements were made during and in furtherance of the conspiracy. United States v. Blevins, 960 F.2d 1252, 1256 (4th Cir. 1992). It is not necessary for the district court to set forth a detailed rationale for admitting the statement as long as the record demonstrates the statement's admissibility. Id.

Crum contends that Dorsey, a co-conspirator, should not have been allowed to testify that Watts told him, after Crum's arrest, that business would continue while Crum was in jail and that Crum would be out of jail soon to continue running Carver Hall. This statement was proper under Rule 801(d)(2)(E). Watts' statement shows that the conspiracy was ongoing while Crum was in jail and that Watts, a co-conspirator, would run the organization until Crum's release. Further, there was other testimony at trial that the ring continued to operate despite Crum's incarceration. For instance, a letter from Crum to Watts was read into the record. In the letter, Crum told Watts that he was "to call the shots and make moves." Dorsey's testimony was entirely proper. See United States v. Shores, 33 F.3d 438, 443 & n.4 (4th Cir. 1994), cert. denied, ___ U.S. ___, 63 U.S.L.W. 3690 (U.S. Mar. 20, 1995) (No. 94-7025).

McLaughlin's statements, although not made to a co-conspirator, were also admissible. McLaughlin testified about two statements made by Watts to McLaughlin: that a shoebox contained $5000; and that Crum had work for Watts to do. The reference to the $5000 was made after McLaughlin drove Watts to Dorsey's house, where Watts

4

picked up a shoebox. Watts expressed his concern about how he might hide the money in the shoebox and whether someone might question him having so much money on his person. Later that day, Watts informed McLaughlin, who was still driving Watts around, that Crum had called him, informing him that his trip had been cancelled because Crum had work for him [Watts] to do. These statements were made by Watts, a co-conspirator. And they were made while McLaughlin assisted Watts in carrying out his duties as a member of the conspiracy. Thus, they were admissible under Rule 801(d)(2)(E).

McLaughlin also testified that an unidentified co-conspirator told him that they intended to file the serial numbers off guns that McLaughlin provided to the organization. When this statement was made, the unidentified co-conspirator was at the Dorsey stash house, he was handling the guns that McLaughlin had provided, and the statement related to what was to be done to the guns. The man was clearly a member of the organization. His statement was made in an effort to allay McLaughlin's fears that the guns might be traced back to him in the hope that either he would not report them stolen or that he would continue to supply the organization with guns. Again, the statement was made in furtherance of the conspiracy.

Finally, Dorsey contends that certain testimony by an investigating officer was inadmissible. Three of the statements were admissible because they were not offered for their truth but were offered to provide background information about the investigation. United States v. Love, 767 F.2d 1052, 1063 (4th Cir. 1985), cert. denied, 474 U.S. 1081 (1986). The other three statements to which Crum objects were hearsay. However, given the overwhelming strength of the case against Crum, the admission of these statements was not reversible error.

We therefore affirm the convictions. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the court and argument would not aid the decisional process.

AFFIRMED

5