## UNITED STATES *v.* OLANO ET AL.

No. 91–1306.   Argued December 9, 1992—Decided April 26, 1993

O'CONNOR, J., delivered the opinion of the Court, in which REHNQUIST, C. J., and SCALIA, KENNEDY, SOUTER, and THOMAS, JJ., joined. KENNEDY, J., filed a concurring opinion, *post*, p. 741. STEVENS, J., filed a dissenting opinion, in which WHITE and BLACKMUN, JJ., joined, *post*, p. 743.

*Solicitor General Starr* argued the cause for the United States. With him on the briefs were *Assistant Attorney General Mueller, Deputy Solicitor General Bryson, William K. Kelley,* and *Joel Gershowitz.*

*Carter G. Phillips* argued the cause for respondents and filed a brief for respondent Olano. *William J. Genego* and *Sheryl Gordon McCloud* filed a brief for respondent Gray.

JUSTICE O'CONNOR delivered the opinion of the Court.

The question in this case is whether the presence of alternate jurors during jury deliberations was a "plain error" that the Court of Appeals was authorized to correct under Federal Rule of Criminal Procedure 52(b).

I

Each of the respondents, Guy W. Olano, Jr., and Raymond M. Gray, served on the board of directors of a savings and loan association. In 1986, the two were indicted in the Western District of Washington on multiple federal charges for their participation in an elaborate loan "kickback" scheme. Their joint jury trial with five other codefendants commenced in March 1987. All of the parties agreed that 14 jurors would be selected to hear the case, and that the 2 alternates would be identified before deliberations began.

On May 26, shortly before the end of the 3-month trial, the District Court suggested to the defendants that the two alternate jurors, soon to be identified, might be allowed to attend deliberations along with the regular jurors:

". . . I'd just like you to think about it, you have a day, let me know, it's just a suggestion and you can—if there is even one person who doesn't like it we won't do it, but it is a suggestion that other courts have followed in long cases where jurors have sat through a lot of testimony, and that is to let the alternates go in but not participate, but just to sit in on deliberations.

"It's strictly a matter of courtesy and I know many judges have done it with no objections from counsel. One of the other things it does is if they don't participate but they're there, if an emergency comes up and people decide they'd rather go with a new alternate rather than 11, which the rules provide, it keeps that option open. It also keeps people from feeling they've sat here for three months and then get just kind of kicked out. But it's certainly not worth—unless it's something you all

agree to, it's not worth your spending time hassling about, you know what I mean? You've got too much else on your mind. I don't want it to be a big issue; it's just a suggestion. Think about it and let me know." App. 79.

The matter arose again the next day, in an ambiguous exchange between Gray's counsel and the District Court:

"THE COURT: [H]ave you given any more thought as to whether you want the alternates to go in and not participate, or do you want them out?

"MR. ROBISON [counsel for Gray]: We would ask they not.

"THE COURT: Not." App. 82.

One day later, on May 28, the last day of trial, the District Court for a third time asked the defendants whether they wanted the alternate jurors to retire into the jury room. Counsel for defendant Davy Hilling gave an unequivocal, affirmative answer.

"THE COURT: Well, Counsel, I received your alternates. Do I understand that the defendants now—it's hard to keep up with you, Counsel. It's sort of a day by day—but that's all right. You do all agree that all fourteen deliberate?

"Okay. Do you want me to instruct the two alternates not to participate in deliberation?

"MR. KELLOGG [counsel for Hilling]: That's what I was on my feet to say. It's my understanding that the conversation was the two alternates go back there instructed that they are not to take part in any fashion in the deliberations." App. 86.

This discussion, like the preceding two, took place outside the hearing of the jurors. As before, both Gray's counsel and Olano's counsel were present. Gray, too, attended all three discussions. Olano may not have attended the third—

he claims that the Marshal failed to return him to the courtroom in time—but he was present at the first two.

The District Court concluded that Hilling's counsel was speaking for the other defendants as well as his own client. None of the other counsel intervened during the colloquy between the District Court and Hilling's counsel on May 28, nor did anyone object later the same day when the court instructed the jurors that the two alternates would be permitted to attend deliberations. The court instructed:

> "We have indicated to you that the parties would be selecting alternates at this time. I am going to inform you who those alternates are, but before I do, let me tell you, I think it was a difficult selection for all concerned, and since the law requires that there be a jury of twelve, it is only going to be a jury of twelve. But what we would like to do in this case is have all of you go back so that even the alternates can be there for the deliberations, but according to the law, the alternates must not participate in the deliberations. It's going to be hard, but if you are an alternate, we think you should be there because things do happen in the course of lengthy jury deliberations, and if you need to step in, we want you to be able to step in having heard the deliberations. But we are going to ask that you not participate.
>
> "The alternates are Norman Sargent and Shirley Kinsella. I am going to ask at this time now, ladies and gentlemen, that you retire to the jury room and begin your deliberations." App. 89–90.

During deliberations, one of the alternate jurors was excused at his request. The other alternate remained until the jury returned with its verdict.

Both respondents were convicted on a number of charges. They appealed to the United States Court of Appeals for the Ninth Circuit. 934 F. 2d 1425 (1991). The Court of Appeals reversed certain counts for insufficient evidence and then

considered whether the presence of alternate jurors during jury deliberations violated Federal Rule of Criminal Procedure 24(c):

> "The court may direct that not more than 6 jurors in addition to the regular jury be called and impanelled to sit as alternate jurors. Alternate jurors in the order in which they are called shall replace jurors who, prior to the time the jury retires to consider its verdict, become or are found to be unable or disqualified to perform their duties. . . . An alternate juror who does not replace a regular juror shall be discharged after the jury retires to consider its verdict."

Because respondents had not objected to the alternates' presence, the court applied a "plain error" standard under Rule 52(b). Noting that "[w]e have not previously directly resolved the question of the validity of a verdict when alternate jurors are permitted to be present during the jury's deliberations," the court relied on the "language of Rule 24(c), Rule 23(b), the Advisory Committee Notes to Rule 23, and related Ninth Circuit precedent" to hold that Rule 24(c) barred alternate jurors from attending jury deliberations unless the defendant, on the record, explicitly consented to their attendance. 934 F. 2d, at 1436–1437. The court found that Rule 24(c) was violated in the instant case, because "the district court did not obtain individual waivers from each defendant personally, either orally or in writing." *Id.*, at 1438. It then held that the presence of alternates in violation of Rule 24(c) was "inherently prejudicial" and reversible *per se. Ibid.*

> "We cannot fairly ascertain whether in a given case the alternate jurors followed the district court's prohibition on participation. However, even if they heeded the letter of the court's instructions and remained *orally* mute throughout, it is entirely possible that their attitudes, conveyed by facial expressions, gestures or the

like, may have had some effect upon the decision of one or more jurors." *Ibid.* (internal quotation marks and brackets omitted).

Finally, in a footnote, the court decided that "[b]ecause the violation is inherently prejudicial and because it infringes upon a substantial right of the defendants, it falls within the plain error doctrine." *Id.,* at 1439, n. 23.

The Court of Appeals vacated respondents' remaining convictions and did not reach the other "substantial issues" that they had raised. *Id.,* at 1428, n. 3. We granted certiorari to clarify the standard for "plain error" review by the courts of appeals under Rule 52(b). 504 U. S. 908 (1992).

## II

"No procedural principle is more familiar to this Court than that a constitutional right," or a right of any other sort, "may be forfeited in criminal as well as civil cases by the failure to make timely assertion of the right before a tribunal having jurisdiction to determine it." *Yakus* v. *United States,* 321 U. S. 414, 444 (1944). Federal Rule of Criminal Procedure 52(b), which governs on appeal from criminal proceedings, provides a court of appeals a limited power to correct errors that were forfeited because not timely raised in district court. The Rule has remained unchanged since the original version of the Criminal Rules, and was intended as "a restatement of existing law." Advisory Committee's Notes on Fed. Rule Crim. Proc. 52, 18 U. S. C. App., p. 833. It is paired, appropriately, with Rule 52(a), which governs nonforfeited errors. Rule 52 provides:

> "(a) HARMLESS ERROR. Any error, defect, irregularity or variance which does not affect substantial rights shall be disregarded.
> "(b) PLAIN ERROR. Plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court."

Although "[a] rigid and undeviating judicially declared practice under which courts of review would invariably and under all circumstances decline to consider all questions which had not previously been specifically urged would be out of harmony with . . . the rules of fundamental justice," *Hormel* v. *Helvering*, 312 U. S. 552, 557 (1941), the authority created by Rule 52(b) is circumscribed. There must be an "error" that is "plain" and that "affect[s] substantial rights." Moreover, Rule 52(b) leaves the decision to correct the forfeited error within the sound discretion of the court of appeals, and the court should not exercise that discretion unless the error " 'seriously affect[s] the fairness, integrity or public reputation of judicial proceedings.' " *United States* v. *Young*, 470 U. S. 1, 15 (1985) (quoting *United States* v. *Atkinson*, 297 U. S. 157, 160 (1936)).

## A

Rule 52(b) defines a single category of forfeited-but-reversible error. Although it is possible to read the Rule in the disjunctive, as creating two separate categories—"plain errors" and "defects affecting substantial rights"—that reading is surely wrong. See *Young*, 470 U. S., at 15, n. 12 (declining to adopt disjunctive reading). As we explained in *Young*, the phrase "error or defect" is more simply read as "error." *Ibid.* The forfeited error "may be noticed" only if it is "plain" and "affect[s] substantial rights." More precisely, a court of appeals may *correct* the error (either vacating for a new trial, or reversing outright) only if it meets these criteria. The appellate court must consider the error, putative or real, in deciding whether the judgment below should be overturned, but cannot provide that remedy unless Rule 52(b) applies (or unless some other provision authorizes the error's correction, an issue that respondents do not raise).

The first limitation on appellate authority under Rule 52(b) is that there indeed be an "error." Deviation from a legal

rule is "error" unless the rule has been waived. For example, a defendant who knowingly and voluntarily pleads guilty in conformity with the requirements of Rule 11 cannot have his conviction vacated by a court of appeals on the ground that he ought to have had a trial. Because the right to trial is waivable, and because the defendant who enters a valid guilty plea waives that right, his conviction without a trial is not "error."

Waiver is different from forfeiture. Whereas forfeiture is the failure to make the timely assertion of a right, waiver is the "intentional relinquishment or abandonment of a known right." *Johnson* v. *Zerbst*, 304 U. S. 458, 464 (1938); see, *e. g.*, *Freytag* v. *Commissioner*, 501 U. S. 868, 894, n. 2 (1991) (SCALIA, J., concurring in part and concurring in judgment) (distinguishing between "waiver" and "forfeiture"); Spritzer, Criminal Waiver, Procedural Default and the Burger Court, 126 U. Pa. L. Rev. 473, 474–477 (1978) (same); Westen, Away from Waiver: A Rationale for the Forfeiture of Constitutional Rights in Criminal Procedure, 75 Mich. L. Rev. 1214, 1214–1215 (1977) (same). Whether a particular right is waivable; whether the defendant must participate personally in the waiver; whether certain procedures are required for waiver; and whether the defendant's choice must be particularly informed or voluntary, all depend on the right at stake. See, *e. g.*, 2 W. LaFave & J. Israel, Criminal Procedure § 11.6 (1984) (allocation of authority between defendant and counsel); Dix, Waiver in Criminal Procedure: A Brief for More Careful Analysis, 55 Texas L. Rev. 193 (1977) (waivability and standards for waiver). Mere forfeiture, as opposed to waiver, does not extinguish an "error" under Rule 52(b). Although in theory it could be argued that "[i]f the question was not presented to the trial court no error was committed by the trial court, hence there is nothing to review," Orfield, The Scope of Appeal in Criminal Cases, 84 U. Pa. L. Rev. 825, 840 (1936), this is not the theory that Rule 52(b) adopts. If a legal rule was violated during the district court proceed-

ings, and if the defendant did not waive the rule, then there has been an "error" within the meaning of Rule 52(b) despite the absence of a timely objection.

The second limitation on appellate authority under Rule 52(b) is that the error be "plain." "Plain" is synonymous with "clear" or, equivalently, "obvious." See *Young, supra,* at 17, n. 14; *United States* v. *Frady,* 456 U. S. 152, 163 (1982). We need not consider the special case where the error was unclear at the time of trial but becomes clear on appeal because the applicable law has been clarified. At a minimum, a court of appeals cannot correct an error pursuant to Rule 52(b) unless the error is clear under current law.

The third and final limitation on appellate authority under Rule 52(b) is that the plain error "affec[t] substantial rights." This is the same language employed in Rule 52(a), and in most cases it means that the error must have been prejudicial: It must have affected the outcome of the district court proceedings. See, *e. g., Bank of Nova Scotia* v. *United States,* 487 U. S. 250, 255–257 (1988); *United States* v. *Lane,* 474 U. S. 438, 454–464 (1986) (Brennan, J., concurring in part and dissenting in part); *Kotteakos* v. *United States,* 328 U. S. 750, 758–765 (1946). When the defendant has made a timely objection to an error and Rule 52(a) applies, a court of appeals normally engages in a specific analysis of the district court record—a so-called "harmless error" inquiry—to determine whether the error was prejudicial. Rule 52(b) normally requires the same kind of inquiry, with one important difference: It is the defendant rather than the Government who bears the burden of persuasion with respect to prejudice. In most cases, a court of appeals cannot correct the forfeited error unless the defendant shows that the error was prejudicial. See *Young, supra,* at 17, n. 14 ("[F]ederal courts have consistently interpreted the plain-error doctrine as requiring an appellate court to find that the claimed error . . . had [a] prejudicial impact on the jury's deliberations"). This burden shifting is dictated by a subtle but important

difference in language between the two parts of Rule 52: While Rule 52(a) precludes error correction only if the error "does *not* affect substantial rights" (emphasis added), Rule 52(b) authorizes no remedy unless the error *does* "affec[t] substantial rights." See also Note, Appellate Review in a Criminal Case of Errors Made Below Not Properly Raised and Reserved, 23 Miss. L. J. 42, 57 (1951) (summarizing existing law) ("The error must be real and such that it probably influenced the verdict . . .").

We need not decide whether the phrase "affecting substantial rights" is always synonymous with "prejudicial." See generally *Arizona* v. *Fulminante,* 499 U. S. 279, 310 (1991) (constitutional error may not be found harmless if error deprives defendant of the " 'basic protections [without which] a criminal trial cannot reliably serve its function as a vehicle for determination of guilt or innocence, and no criminal punishment may be regarded as fundamentally fair' ") (quoting *Rose* v. *Clark,* 478 U. S. 570, 577–578 (1986)). There may be a special category of forfeited errors that can be corrected regardless of their effect on the outcome, but this issue need not be addressed. Nor need we address those errors that should be presumed prejudicial if the defendant cannot make a specific showing of prejudice. Normally, although perhaps not in every case, the defendant must make a specific showing of prejudice to satisfy the "affecting substantial rights" prong of Rule 52(b).

B

Rule 52(b) is permissive, not mandatory. If the forfeited error is "plain" and "affect[s] substantial rights," the court of appeals has authority to order correction, but is not required to do so. The language of the Rule ("may be noticed"), the nature of forfeiture, and the established appellate practice that Congress intended to continue all point to this conclusion. "[I]n criminal cases, where the life, or as in this case the liberty, of the defendant is at stake, the courts of the United States, in the exercise of a sound discretion, may

notice [forfeited error]." *Sykes* v. *United States,* 204 F. 909, 913–914 (CA8 1913). Accord, *Crawford* v. *United States,* 212 U. S. 183, 194 (1909); former Supreme Court Rule 27.6 (1939) (cited in Advisory Committee's Notes on Fed. Rule Crim. Proc. Rule 52(b), 18 U. S. C. App., p. 833) ("'[T]he court, at its option, may notice a plain error not assigned or specified'").

We previously have explained that the discretion conferred by Rule 52(b) should be employed "'in those circumstances in which a miscarriage of justice would otherwise result.'" *Young,* 470 U. S., at 15 (quoting *Frady, supra,* at 163, n. 14). In our collateral-review jurisprudence, the term "miscarriage of justice" means that the defendant is actually innocent. See, *e. g., Sawyer* v. *Whitley,* 505 U. S. 333, 339–340 (1992). The court of appeals should no doubt correct a plain forfeited error that causes the conviction or sentencing of an actually innocent defendant, see, *e. g., Wiborg* v. *United States,* 163 U. S. 632 (1896), but we have never held that a Rule 52(b) remedy is *only* warranted in cases of actual innocence.

Rather, the standard that should guide the exercise of remedial discretion under Rule 52(b) was articulated in *United States* v. *Atkinson,* 297 U. S. 157 (1936). The court of appeals should correct a plain forfeited error affecting substantial rights if the error "seriously affect[s] the fairness, integrity or public reputation of judicial proceedings." *Id.,* at 160. As we explained in *Young,* the "standard laid down in *United States* v. *Atkinson* [was] codified in Federal Rule of Criminal Procedure 52(b)," 470 U. S., at 7, and we repeatedly have quoted the *Atkinson* language in describing plain-error review, see *id.,* at 15; *Frady, supra,* at 163, n. 13; *Silber* v. *United States,* 370 U. S. 717, 718 (1962) *(per curiam); Johnson* v. *United States,* 318 U. S. 189, 200 (1943); *United States* v. *Socony-Vacuum Oil Co.,* 310 U. S. 150, 239 (1940); see also *Connor* v. *Finch,* 431 U. S. 407, 421, n. 19 (1977) (civil appeal). An error may "seriously affect the fairness, integrity or public reputation of judicial proceedings" independent of the

defendant's innocence. Conversely, a plain error affecting substantial rights does not, without more, satisfy the *Atkinson* standard, for otherwise the discretion afforded by Rule 52(b) would be illusory.

With these basic principles in mind, we turn to the instant case.

### III

The presence of alternate jurors during jury deliberations is no doubt a deviation from Rule 24(c). The Rule explicitly states: "An alternate juror who does not replace a regular juror shall be discharged after the jury retires to consider its verdict." It is a separate question whether such deviation amounts to "error" when the defendant consents to the alternates' presence. The Government supposes that there was indeed an "error" in this case, on the premise that Rule 24(c) is nonwaivable, see Reply Brief for United States 9, n. 4, and we assume without deciding that this premise is correct. The Government also essentially concedes that the "error" was "plain." See *id.*, at 8–9, and n. 4.

We therefore focus our attention on whether the error "affect[ed] substantial rights" within the meaning of Rule 52(b), and conclude that it did not. The presence of alternate jurors during jury deliberations is not the kind of error that "affect[s] substantial rights" independent of its prejudicial impact. Nor have respondents made a specific showing of prejudice. Finally, we see no reason to presume prejudice here.

Assuming *arguendo* that certain errors "affec[t] substantial rights" independent of prejudice, the instant violation of Rule 24(c) is not such an error. Although the presence of alternate jurors does contravene "'the cardinal principle that the deliberations of the jury shall remain private and secret,'" Advisory Committee's Notes on Fed. Rule Crim. Proc. 23(b), 18 U. S. C. App., p. 785 (quoting *United States* v. *Virginia Erection Corp.*, 335 F. 2d 868, 872 (CA4 1964)), the primary if not exclusive purpose of jury privacy and secrecy

is to protect the jury's deliberations from improper influence. "[I]f no harm resulted from this intrusion [of an alternate juror into the jury room,] reversal would be pointless." *United States* v. *Watson*, 669 F. 2d 1374, 1391 (CA11 1982). We generally have analyzed outside intrusions upon the jury for prejudicial impact. See, *e. g.*, *Parker* v. *Gladden*, 385 U. S. 363 (1967) *(per curiam)* (bailiff's comments to jurors, such as "Oh that wicked fellow he is guilty," were prejudicial); *Patton* v. *Yount*, 467 U. S. 1025 (1984) (pretrial publicity was not prejudicial); *Holbrook* v. *Flynn*, 475 U. S. 560 (1986) (presence of uniformed state troopers in courtroom was not prejudicial). A prime example is *Remmer* v. *United States*, 347 U. S. 227 (1954), where an outsider had communicated with a juror during a criminal trial, appearing to offer a bribe, and the Federal Bureau of Investigation then had investigated the incident. We noted that "[t]he sending of an F. B. I. agent in the midst of a trial to investigate a juror as to his conduct is bound to impress the juror," and remanded for the District Court to "determine the circumstances, the impact thereof upon the juror, and whether or not it was prejudicial, in a hearing with all interested parties permitted to participate." *Id.*, at 229–230.

This "intrusion" jurisprudence was summarized in *Smith* v. *Phillips*, 455 U. S. 209 (1982):

> "[D]ue process does not require a new trial every time a juror has been placed in a potentially compromising situation. Were that the rule, few trials would be constitutionally acceptable. . . . [I]t is virtually impossible to shield jurors from every contact or influence that might theoretically affect their vote. Due process means a jury capable and willing to decide the case solely on the evidence before it, and a trial judge ever watchful to prevent prejudicial occurrences and to determine the effect of such occurrences when they happen." *Id.*, at 217.

There may be cases where an intrusion should be presumed prejudicial, see, *e. g., Patton, supra,* at 1031–1035; *Turner* v. *Louisiana,* 379 U. S. 466 (1965), but a presumption of prejudice as opposed to a specific analysis does not change the ultimate inquiry: Did the intrusion affect the jury's deliberations and thereby its verdict? We cannot imagine why egregious comments by a bailiff to a juror *(Parker)* or an apparent bribe followed by an official investigation *(Remmer)* should be evaluated in terms of "prejudice," while the mere *presence* of alternate jurors during jury deliberations should not. Of course, the issue here is whether the alternates' presence sufficed to establish remedial authority under Rule 52(b), not whether it violated the Sixth Amendment or Due Process Clause, but we see no reason to depart from the normal interpretation of the phrase "affecting substantial rights."

The question, then, is whether the instant violation of Rule 24(c) prejudiced respondents, either specifically or presumptively. In theory, the presence of alternate jurors during jury deliberations might prejudice a defendant in two different ways: either because the alternates actually participated in the deliberations, verbally or through "body language"; or because the alternates' presence exerted a "chilling" effect on the regular jurors. See *Watson, supra,* at 1391; *United States* v. *Allison,* 481 F. 2d 468, 472 (CA5 1973). Conversely, "if the alternate in fact abided by the court's instructions to remain orally silent and not to otherwise indicate his views or attitude . . . and if the presence of the alternate did not operate as a restraint upon the regular jurors' freedom of expression and action, we see little substantive difference between the presence of [the alternate] and the presence in the juryroom of an unexamined book which had not been admitted into evidence." *Id.,* at 472.

Respondents have made no specific showing that the alternate jurors in this case either participated in the jury's deliberations or "chilled" deliberation by the regular jurors. We

need not decide whether testimony on this score by the alternate jurors or the regular jurors, through affidavits or at a *Remmer*-like hearing, would violate Federal Rule of Evidence 606(b), compare *Watson, supra,* at 1391–1392, and n. 17, with *United States* v. *Beasley,* 464 F. 2d 468 (CA10 1972), or whether the courts of appeals have authority to remand for *Remmer*-like hearings on plain-error review. Respondents have never requested a hearing, and thus the record before us contains no direct evidence that the alternate jurors influenced the verdict. On this record, we are not persuaded that the instant violation of Rule 24(c) was actually prejudicial.

Nor will we presume prejudice for purposes of the Rule 52(b) analysis here. The Court of Appeals was incorrect in finding the error "inherently prejudicial." 934 F. 2d, at 1439. Until the close of trial, the 2 alternate jurors were indistinguishable from the 12 regular jurors. Along with the regular jurors, they commenced their office with an oath, see Tr. 212 (Mar. 2, 1987), received the normal initial admonishment, see *id.,* at 212–218, heard the same evidence and arguments, and were not identified as alternates until *after* the District Court gave a final set of instructions, see App. 89–90. In those instructions, the District Court specifically enjoined the jurors that "according to the law, the alternates must not participate in the deliberations," and reiterated, "we are going to ask that you not participate." *Ibid.* The Court of Appeals should not have supposed that this injunction was contravened. "[It is] the almost invariable assumption of the law that jurors follow their instructions." *Richardson* v. *Marsh,* 481 U. S. 200, 206 (1987). "[We] presum[e] that jurors, conscious of the gravity of their task, attend closely the particular language of the trial court's instructions in a criminal case and strive to understand, make sense of, and follow the instructions given them." *Francis* v. *Franklin,* 471 U. S. 307, 324, n. 9 (1985). See also *Strickland* v. *Washington,* 466 U. S. 668, 694 (1984) (in assessing

prejudice for purposes of ineffective-assistance claim, "a court should presume ... that the judge or jury acted according to law"). Nor do we think that the mere presence of alternate jurors entailed a sufficient risk of "chill" to justify a presumption of prejudice on that score.

In sum, respondents have not met their burden of showing prejudice under Rule 52(b). Whether the Government could have met its burden of showing the absence of prejudice, under Rule 52(a), if respondents had not forfeited their claim of error, is not at issue here. This is a plain-error case, and it is respondents who must persuade the appellate court that the deviation from Rule 24(c) was prejudicial.

Because the conceded error in this case did not "affec[t] substantial rights," the Court of Appeals had no authority to correct it. We need not consider whether the error, if prejudicial, would have warranted correction under the *Atkinson* standard as "seriously affect[ing] the fairness, integrity or public reputation of judicial proceedings." The judgment of the Court of Appeals is reversed, and the case is remanded for further proceedings consistent with this opinion.

*So ordered.*

JUSTICE KENNEDY, concurring.

I join the Court's opinion and add this brief statement to express my own understanding of the Court's holding.

When a court notices an error on its own initiative under Federal Rule of Criminal Procedure 52(b), see *Silber* v. *United States*, 370 U. S. 717, 718 (1962) *(per curiam)*, it may be awkward to say that the case is decided by burden of proof concepts, for by definition none of the parties have addressed the issue. But the Court's opinion is phrased with care to indicate that burden of proof concepts are the normal or usual mode of analysis of error under Rule 52, see *ante*, at 734–735, and so other rules may apply where the aggrieved party has not raised the issue. In most cases, how-

ever, the party will have raised the alleged error on appeal. In that context, the analysis the Court adopts today is helpful, for it gives operative effect to the difference under Rule 52 between those cases where an objection has been preserved and those where it has not.

That leads me to a final point, which is the independent force of the Rule against permitting alternates in the jury room during deliberations. As the Court is careful to note, this case was submitted on the assumption that it is error to follow this practice, and the Court does not question that premise. Indeed, there are good reasons to suppose that Federal Rule of Criminal Procedure 24(c) is the product of a judgment that our jury system should be given a stable and constant structure, one that cannot be varied by a court with or without the consent of the parties. See Reply Brief for United States 9, n. 4. In the course of a lengthy trial, defense counsel, who may have numerous requests for rulings pending before a district court, may acquiesce in a proposal from the bench concerning jury composition so that counsel can concentrate on matters they deem more pressing. In such a climate, the trial court ought not to put counsel in the position of having to object to a suggestion that compromises the Federal Rules.

If there were a case in which a specific objection had been made and overruled, the systemic costs resulting from the Rule 24(c) violation would likely be significant, since it would seem to me most difficult for the Government to show the absence of prejudice, which would be required to avoid reversal of the conviction under Rule 52(a). Rule 24(c) is based on certain premises about group dynamics that make it difficult for us to know how the jury's deliberations may have been affected. Defendants seeking reversal under Rule 52(b) are also likely to experience these difficulties in proving prejudice. But, as the Court makes clear today, the operation of Rule 52(b) does not permit a party to withhold

an objection to the presence of alternate jurors during jury deliberations and then to demand automatic reversal.

JUSTICE STEVENS, with whom JUSTICE WHITE and JUSTICE BLACKMUN join, dissenting.

Under Federal Rule of Criminal Procedure 24(c), the trial judge in this case had a clear and unqualified duty to dismiss the alternate jurors at the end of the trial. Indeed, she could no more admit the alternate jurors into the jury room than she could afford any stranger access to that room while the defendants' guilt or innocence was being decided. There can be no question but that the trial judge's failure to abide by the strictures of Rule 24(c) resulted in a violation of the "'cardinal principle that the deliberations of the jury shall remain private and secret in every case.'" Advisory Committee's Notes on Fed. Rule Crim. Proc. 23(b), 18 U. S. C. App., p. 785 (quoting *United States* v. *Virginia Erection Corp.*, 335 F. 2d 868, 872 (CA4 1964).

In my view, it is equally evident that this violation implicated "substantial rights" within the meaning of Rule 52. I cannot agree with the Court's suggestion in Part III of its opinion that Rule 24(c) errors may be deemed to "affect substantial rights" only when they have a prejudicial impact on a particular defendant. At least some defects bearing on the jury's deliberative function are subject to reversal regardless of whether prejudice can be shown, not only because it is so difficult to measure their effects on a jury's decision, but also because such defects "undermin[e] the structural integrity of the criminal tribunal itself." *Vasquez* v. *Hillery*, 474 U. S. 254, 263–264 (1986) (racial discrimination in selection of grand jury); see also *Gray* v. *Mississippi*, 481 U. S. 648, 668 (1987); *id.*, at 669 (Powell, J., concurring) (improper exclusion of juror opposed to death penalty). Whether or not they harm the defendant, errors that call into question the integrity of the jury's deliberations may harm the system

as a whole. In that sense, they may be said to "seriously affect the fairness, integrity or public reputation of judicial proceedings," *United States* v. *Atkinson,* 297 U. S. 157, 160 (1936), making them candidates for reversal under Rule 52. See *United States* v. *Young,* 470 U. S. 1, 15 (1985) (citing *Atkinson, supra*).

The phrase "substantial rights" appears twice in Rule 52: once in Rule 52(a), which describes the harmless-error rule, and again in Rule 52(b), in connection with the plain-error rule. See *ante,* at 731. Presumably, the words have the same meaning each time they are used. If the majority's understanding of "substantial rights" is correct, then even an objection by respondents to the alternates' presence during jury deliberations would not have mandated reversal here; instead, the Rule 24(c) violation would have been subject to harmless-error review, as it did not "affect substantial rights" within the meaning of Rule 52(a). I cannot concur in reasoning that would lead to this result. Had respondents objected, and had the trial court nonetheless refused to follow the plain dictates of Rule 24(c), deliberately rejecting the considered judgment of the Rule's drafters, I think it clear that reversal would have been the proper response, with or without a showing of prejudice.

Reading "substantial rights" the same way in Rule 52(b) as in Rule 52(a) does not, of course, eliminate the difference between cases in which no objection is made and those in which one is. A nonforfeited error affecting substantial rights must be corrected under Rule 52(a). A forfeited error, however, even if it is plain and affects substantial rights, "may" be corrected at the discretion of the reviewing court under Rule 52(b). See Fed. Rule Crim. Proc. 52(b); *ante,* at 735–737. It is this distinction between automatic and discretionary reversal that gives practical effect to the difference between harmless-error and plain-error review, and also every incentive to the defendant to raise objections at the trial level.

In this case, for instance, to say that the Rule 24(c) violation affected substantial rights for purposes of Rule 52 does not answer the ultimate, and, in my view, more difficult question presented: whether the Court of Appeals properly exercised its discretion to remedy the error. After considering the nature of the error, the degree to which the respondents can be said to have consented to the procedure in question, see *ante*, at 727–729, and the likelihood that the procedure actually affected the outcome of the jury deliberations, a reasonable judge could well have concluded that the Rule 24(c) error in this case did not call for reversal under Rule 52(b). Rather, an opinion emphasizing the significance of the error, designed to provide guidance to the trial courts for future cases, might have been viewed as an appropriate response.

The courts of appeals are, however, allowed a wide measure of discretion in the supervision of litigation in their respective circuits. See *Ortega-Rodriguez* v. *United States*, 507 U. S. 234, 251, n. 24 (1993); *Thomas* v. *Arn*, 474 U. S. 140, 146–148 (1985). Certainly, the courts of appeals are better positioned than we are to evaluate the need for firm enforcement of a procedural rule designed to protect the integrity of jury deliberations and to weigh the interest in such enforcement against other relevant considerations. Because I am not persuaded that the Court of Appeals here abused its broad discretion, I would affirm its judgment.