MICHAEL, Circuit Judge,
dissenting:
The majority makes a convincing case that the trial judge’s hostile and extensive questioning of defense witnesses made it appear that she was on the side of the government. See ante at 671-79. The only problem is that the majority stops short of vacating the defendants’ convictions. Because the judge’s many questions and comments revealed-in front of the jury-a deep skepticism or disbelief of the defense case, the defendants did not receive a fair trial. I would therefore vacate their convictions and grant them a new trial.
I.
This case must be analyzed, as the majority says, under the forfeited error framework established in United States v. Olano, 507 U.S. 725, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993). I agree with the majority that the trial judge “became overly involved in the questioning of witnesses in this case.” Ante at 679. Indeed, the judge was “so pervasive in [her] interruptions and interrogations that [she] ... appeared] to usurp the role of ... the prosecutor.” United States v. Parodi, 703 F.2d 768, 776 (4th Cir.1983). Accordingly, the judge’s approach was plain error, a point the majority does not challenge. Moreover, as I will explain, the error affected the substantial rights of the defendants.
As a general rule, an error affects substantial rights only when the defendant establishes that the error was prejudicial, that is, it “affected the outcome of the district court proceedings.” Olano, 507 U.S. at 734. But a showing of actual prejudice is not required in every instance: “[t]here may be a special category of forfeited errors that can be corrected regardless of their effect on the outcome.” Id. at 735, 113 S.Ct. 1770. As we have said, “[e]rrors that are not susceptible to harmless error review fall within this special category and therefore ‘necessarily’ affect substantial rights.” United States v. Neal, 101 F.3d 993, 999 (4th Cir.1996). When the trial judge unmistakably adopts the role of prosecutor, there is a “special category” error that affects substantial rights regardless of whether the defendant can show actual prejudice. See Neal, 101 F.3d at 999 (finding a “special category” error, not requiring a showing of actual prejudice, when the trial judge fully assumed the role of prosecutor in a criminal contempt proceeding); United States v. Van Dyke, 14 F.3d 415, 423 n. 1 (8th Cir.1994) (“[W]e consider the court’s excessive intervention and lack of neutrality as plain error which deprived the defendant of a fair trial.”); Arizona v. Fulminante, 499 U.S. 279, 309-10, 111 S.Ct. 1246, 113 L.Ed.2d 302 (1991) (citing Tumey v. Ohio, 273 U.S. 510, 47 S.Ct. 437, 71 L.Ed. 749 (1927), for the proposition that a showing of actual prejudice is not required when the trial judge lacks impartiality). A defendant, in sum, has a right to an impartial judge-one who takes care not to signal to the jury that she believes the defendant is guilty. This right to an impartial judge cannot be *682 trampled, not even by overwhelming evidence of guilt. See Turney, 273 U.S. at 535, 47 S.Ct. 437 (“No matter what the evidence was against [the defendant], he had the right to have an impartial judge.”).
II.
The majority lays out ample proof that the judge’s repeated interjections made it appear that she was biased against the defendants. The majority provides examples of how the judge “[t]ime and again ... engaged in active questioning unfavorable to the defense,” ante at 675; repeatedly and forcefully questioned defendant Curry-Robinson, both on direct and cross, leaving the impression that she (the judge) did not believe her, ante at 673-75; rehabilitated prosecution witnesses who had been impeached under defense questioning, ante at 673; and repeatedly reinforced damaging points that the defendants had already conceded, ante at 674. A few numbers illustrate how pervasively the judge conveyed her skepticism of the defendants’ case:
• When defendant Curry-Robinson took the stand for direct testimony, her lawyer asked opening questions that take up about four pages of transcript. The judge then weighed in and asked questions that cover the next eight pages of transcript. J.A. 719-731. This pattern continued throughout the rest of Curry-Robinson’s testimony.
• Over the course of Curry-Robinson’s direct testimony, which fills almost 100 pages of transcript, the judge asked roughly one-third (over 100) of the questions, compared to just over 200 asked by Curry-Robinson’s lawyer. J.A. 719-813. Of the questions asked by the judge during Curry-Robinson’s direct testimony, at least 36 were cross-examination. The judge’s cross-examination covered virtually every significant issue about which Curry-Robinson attempted to testify, including her defense of good faith.
• During Curry-Robinson’s cross-examination by the prosecution, the judge again asked roughly one-third of the questions, about 25, compared to about 55 questions asked by the prosecutor. J.A. 825-843.
• Again, as the majority has indicated, many of the judge’s questions and comments during the direct and cross-examination of Curry-Robinson showed disdain toward Curry-Robinson and disbelief of her testimony.
The extent, tone, and severity of the judge’s questioning make it clear that she in effect assumed the role of prosecutor. This does not matter, the majority argues, because the “prosecutors would have cross-examined Curry-Robinson in much the same manner as did the judge,” if that had been necessary. Ante at 680-84. The majority’s argument misses the point, I respectfully suggest. The judge’s cross-examination was more effective than the prosecutor’s for several reasons. The judge was not constrained by normal trial procedures. The judge interrupted defense counsel throughout his direct examination of Curry-Robinson, effectively undertaking a point-by-point impeachment of her story. The judge repeated questions that had been asked and answered, driving home damaging points. What is most critical, the judge’s questions and comments had the imposing weight of the judge’s office behind them. Because the judge occupies a position of “special persuasiveness in the eyes of the jury,” Parodi, 703 F.2d at 775 (internal quotation omitted), the jury could well have concluded that the judge believed that the defendants were guilty. This, I believe, deprived the defendants of a fair and impartial trial. I do not suggest that the able and dedicated judge in this case intentionally set out to take on *683 a prosecutorial role or to deprive the defendants of a fair trial. In light of the government’s evidence, her frustration with the defense case is understandable. Still, it would have been far better if she had erred on the side of non-intervention.
Because the judge adopted the role of the prosecutor for extended stretches during the trial, there is a “special category” error that necessarily affected the substantial rights of the defendants. See Olano, 507 U.S. at 735, 113 S.Ct. 1770; Neal, 101 F.3d at 999. Even when a forfeited error is plain and affects substantial rights, we should reverse only if the error also “seriously affectfs] the fairness, integrity, or public reputation of [the] judicial proceedings.” Olano, 507 U.S. at 736, 113 S.Ct. 1770 (quoting United States v. Atkinson, 297 U.S. 157, 160, 56 S.Ct. 391, 80 L.Ed. 555 (1936) (first alteration in original)). For the reasons I have already mentioned, this last requirement is present in this case. As a result, I respectfully dissent from the majority’s ultimate decision to affirm the convictions. I would grant Curry-Robinson and Godwin a new trial.