[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
MAY 4, 2006
THOMAS K. KAHN
CLERK

No. 05-16408
Non-Argument Calendar

_____

D. C. Docket No. 96-00382-CR-1-JEC-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

MARCUS SMITH,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Northern District of Georgia

_____

**(May 4, 2006)**

Before BIRCH, CARNES and PRYOR, Circuit Judges.

PER CURIAM:

Marcus Smith appeals the district court's imposition of a twelve-month

sentence after the revocation of Smith's supervised release.  We AFFIRM.

## I. BACKGROUND

Smith pled guilty in 1997 to knowingly using and carrying a firearm in conjunction with a crime of violence, carjacking, in violation of 18 U.S.C. § 924(c).  The district court sentenced Smith to sixty months of imprisonment, three years of supervised release, and ordered Smith to pay $1,000 restitution.  In October 2002, Smith's probation officer filed a petition for warrant and order to show cause why supervised release should not be revoked.  The petition alleged that Smith (1) tested positive for cocaine use nine times, (2) tested positive for marijuana use ten times, (3) failed to participate in a drug/alcohol abuse program, (4) failed to pay a court-ordered restitution and fine, and (5) failed to notify his probation officer of his change of residence within seventy-two hours of the change.  R1-45 at unnumbered 3-5.

After a revocation hearing in November 2002, at which Smith admitted all the alleged violations, the district court revoked Smith's supervised release and sentenced him to nine months of imprisonment, to be followed by twenty-four months of supervised release.   The special conditions of Smith's supervised release included the duty to (1) make payments toward his restitution and fine, and (2) participate in a drug/alcohol treatment program.  R1-51 at 1-2.  In February

2

2004, Smith's probation officer filed a petition and order to modify the conditions of his supervised release. Because of Smith's positive drug tests and failure to appear for drug treatment, the probation officer requested that the court modify Smith's conditions of supervised release to include the requirement that Smith be placed at Dismas Charities facility for four months and be required to follow all the regulations of the facility. The district court granted the modification petition.

In December 2004, Smith's probation officer filed a petition for warrant and order to show cause why supervised release should not be revoked. The probation officer alleged that Smith had failed to (1) comply with the Dismas Charities facility rules, (2) report to three meetings with his probation officer, (3) attend group and "NA" drug treatment meetings, and (4) submit monthly supervision reports on three occasions. R2-59 at unnumbered 2. The district judge signed the probation officer's petition for warrant and order to show cause on 1 December 2004, but Smith was not arrested until 4 October 2005. R2-59, 65. Following his arrest, the probation officer filed an amended petition for warrant and order to show cause why supervised release should not be revoked. In the amended petition, the probation officer alleged that Smith had failed to (1) comply with the Dismas Charities facility rules and, thus, had been terminated from the facility, (2) report to the probation office on three separate occasions, (3) attend group and

3

"NA" drug/alcohol meetings, (4) submit monthly supervision reports from May 2004 through December 2004, (5) notify the probation officer of his address, because Smith's whereabouts had been unknown since 3 November 2004, and (6) pay his restitution and fine. R2-66 at unnumbered 2-3.

The district judge held a supervised release revocation hearing on 7 November 2005. Smith first admitted all the probation officer's allegations in the amended petition for warrant and order to show cause, except for the allegation that Smith had failed to notify the probation officer of his change of address. R5 at 4. The government then informed the court that, under Chapter 7 of the United States Sentencing Guidelines, Smith's guideline range was five to eleven months of imprisonment based on Grade C violations and Smith's criminal history.[1] Id. at 6. The government also noted that the applicable statutory maximum was fifteen months of imprisonment.[2] Id. The government then recommended that the court

---

[1] Pursuant to U.S.S.G. § 7B1.1(a)(3)(B), "a violation of any other condition of supervision" constitutes a Grade C violation. Smith admitted violating the terms of his supervised release, and, thus, his violations constitute Grade C violations of his supervision. R5 at 4. As calculated in Smith's presentence investigation report prepared for his sentencing for his underlying offense, Smith's criminal history category was III. See also U.S.S.G. § 7B1.4(a) (indicating that the applicable criminal history category used in calculating a defendant's guideline range after revocation of supervised release "is the category applicable at the time the defendant originally was sentenced to a term of supervision"). With Grade C violations, and a criminal history category of III, Smith's resulting Sentencing Guidelines range was 5 to 11 months of imprisonment. U.S.S.G. § 7B1.4(a).

[2] Under 18 U.S.C. § 924(c)(1)(A)(i), the minimum term of imprisonment for using a firearm during a crime of violence, the offense for which Smith was originally convicted, is five years. This minimum term results in Smith's offense being a class D felony classification,

sentence Smith to twelve months of imprisonment with no further supervised release.   Smith requested that the court not revoke his supervised release but continue him on supervision with additional conditions.

In determining Smith's sentence, the district judge considered Smith's history and found that (1) Smith's underlying offense "was really serious," (2) his supervised release had been revoked in 2002, (3) within two weeks of his release from custody on his original revocation, Smith's probation officer submitted a violation report, (4) the probation officer again submitted a violation report a month later, (5) the probation officer submitted a third violation report recommending that Smith go to Dismas Charities, (6) Smith continually tested positive for drugs during his supervision, and (7) Smith was terminated from Dismas Charities.  Id. at 19-20.  The judge also stated that,

> I know that perhaps you have your side of the story, but looking over all of this, this is pretty bad, and I would [be] remiss in my duties if I allowed this to continue on.  As [the government] said, this will be your [sixth] violation report.

pursuant to 18 U.S.C. § 3559(a)(4).   Where a defendant's underlying offense is a class D felony, the defendant may not serve more than two years of imprisonment based on revocation of his supervised release.  18 U.S.C. § 3583(e)(3).  Therefore, because Smith had been sentenced to 9 months of imprisonment for his first revocation of his supervised release, his remaining maximum imprisonment term was 15 months on re-revocation.  See R5 at 6; see also United States v. Williams, 425 F.3d 987, 989 (11th Cir. 2005) (per curiam) (recognizing that statutory maximums of § 3583(e)(3) apply in the aggregate and that, where a defendant had previously been sentenced to one-year and one-day imprisonment upon revocation of his supervised release, the district court could sentence the defendant to only 364 days of imprisonment upon re-revocation of his supervised release).

5

I don't think there's any other point in us paying for more drug treatment . . . .  All I can do is remove you right now, hope to protect society for the period of time that you are on release, and hope this last stint . . . will create an attitude adjustment, but that's totally up to you, but I do think the sentence recommended by the government is appropriate.

Id. at 22.  The judge then sentenced Smith to twelve months of imprisonment, "[o]ne month higher than the range I think based on the repetitiveness of the conduct that's appropriate."  Id.  Smith's counsel then made the following request:

> Smith's counsel: Judge, we would request 12 months and a day.
> Court: The government's saying no.
> Government: Your Honor, obviously he can request it, but he will do 12 months if you impose a 12 month sentence, and if you impose 12 months and a day, he'll do 10 months which is one month longer than his last revocation sentence which seems inappropriate to me.
> Court: I think 12 months without a day.  I think he needs to do a real 12 months and get an attitude adjustment.

Id. at 22-23.

For the first time on appeal, Smith argues that the district judge failed to provide him due process of law because she sentenced him above the applicable guideline range without first considering the United States Sentencing Guidelines Chapter 7 policy statements.  Smith contends that the district judge was statutorily required to "articulate some valid reason" for departing from the Sentencing Guidelines range, but that the judge failed to state such a reason, and, thus, the judge "did not comport with minimal due process."  Appellant's Br. at 11, 12.

6

Smith also maintains that the district judge erred in failing to consider the factors set forth in 18 U.S.C. § 3553(a).

## II. DISCUSSION

Smith did not raise his arguments in the district court, and, thus, we review revocation sentencing arguments that are raised for the first time on appeal for plain error. United States v. Aguillard, 217 F.3d 1319, 1320 (11th Cir. 2000) (per curiam). Under plain error review, there must be (1) an error, (2) that is plain, and (3) affects substantial rights. Id. When these three factors are met, we may then exercise our discretion and correct the error if it "seriously affect[s] the fairness, integrity or public reputation of the judicial proceedings." United States v. Olano, 507 U.S. 725, 732, 113 S.Ct. 1770, 1776 (1993) (citations and internal quotation marks omitted) (alteration in original) .

Upon finding that a defendant violated a condition of his supervised release and after considering the factors set forth in 18 U.S.C. § 3553(a), a district court may revoke the defendant's supervised release and "require the defendant to serve in prison all or part of the term of supervised release." 18 U.S.C. § 3583(e)(3).[3] Where the defendant's underlying offense was a Class D felony, as in Smith's case, the defendant may not be required to serve any more than two years of

_____

[3] On appeal, Smith does not challenge the district judge's revocation of his supervised release.

7

imprisonment. Id. The § 3553(a) factors that the court must consider in imposing a sentence upon revocation of supervised release include: (1) "the nature and circumstances of the offense and the history and characteristics of the defendant;" (2) the need for the sentence to deter criminal conduct, protect the public, and provide the defendant with needed treatment or training; (3) the applicable Sentencing Guidelines or policy statements; and (4) the need to provide restitution. 18 U.S.C. § 3553(a); see also 18 U.S.C. § 3583(e)(3). In explaining the requirement that a district court consider the § 3553(a) factors, we have recognized that, "nothing in [United States v. Booker, 543 U.S. 220, 125 S.Ct. 738 (2005)] or elsewhere requires the district court to state on the record that it has explicitly considered each of the § 3553(a) factors or to discuss each of the § 3553(a) factors." United States v. Scott, 426 F.3d 1324, 1329 (11th Cir. 2005).

Section 7B1.4 of the Chapter 7 policy statements of the Sentencing Guidelines provides the range of imprisonment applicable upon revocation of probation or supervised release. U.S.S.G. § 7B1.4(a). The applicable range in Smith's case, where he committed a Grade C violation of his supervised release and had an original criminal history category of III, was five to eleven months of imprisonment. See U.S.S.G. §§ 7B1.1(a)(3)(B), 7B1.4(a). Chapter 7 of the Sentencing Guidelines is advisory, and it is sufficient that there be "some

8

indication the district court was aware of and considered them." Aguillard, 217 F.3d at 1320.

As an initial matter, the government contends that Smith waived his right to appeal his sentence because, by requesting that the court sentence him to twelve months and one day of imprisonment, Smith "invited the very error about which he complains on appeal." Appellee's Br. at 14. "The doctrine of invited error is implicated when a party induces or invites the district court into making an error. Where invited error exists, it precludes a court from invoking the plain error rule and reversing." United States v. Silvestri, 409 F.3d 1311, 1327 (11th Cir.), cert. denied, __ U.S. __, 126 S.Ct. 772 (2005) (citations and internal quotation marks omitted). Smith did not invite any error by the district court because Smith originally requested that the judge not revoke his supervised release in the first instance, and, only after the judge announced his twelve-month sentence, did Smith request twelve months and one day of imprisonment. Moreover, Smith requested the longer sentence because he sought the apparent benefit of only serving ten months of imprisonment as compared to the twelve months that the district judge intended to impose. Consequently, Smith did not induce or invite the judge to sentence him to twelve months of imprisonment, which is the very error about which he now complains. Accordingly, Smith did not waive his right to appeal

9

his sentence.

As to the merits of his appeal, Smith has failed to establish that the district judge plainly erred in imposing his sentence. First, the record does not support Smith's argument, that the district judge failed to consider the Chapter 7 guidelines, because it is evident that the district judge gave some indication that she was aware of and considered Chapter 7. When the judge imposed Smith's sentence, she stated, "[o]ne month higher than the [Chapter 7 guideline] range I think based on the repetitiveness of the conduct that's appropriate." R5 at 22. Therefore, the record clearly indicates that the district judge "was aware of and considered" the advisory Chapter 7 guidelines. See Aguillard, 217 F.3d at 1320.

Secondly, Smith contends that the district judge failed to consider the factors set forth in § 3553(a) in imposing his sentence. Based on the record, however, this argument similarly fails. Before deciding on the twelve-month sentence, the district judge extensively reviewed Smith's history and his conduct while on supervised release. R5 at 19-20. The judge also noted the seriousness of Smith's underlying offense and that the sentence of twelve months of imprisonment was appropriate in light of the repetitiveness of Smith's conduct. The judge further stated: "All I can do is remove you right now, hope to protect society for the period of time that you are on release." Id. at 22. Given the district judge's consideration

10

of the nature and circumstances of Smith's offense, Smith's history and conduct while on supervised release, and the need to protect society, it cannot be said that she did not consider the § 3553(a) factors. See 18 U.S.C. § 3553(a); see also Scott, 426 F.3d at 1329 (holding that the district court is not required "to state on the record that it has explicitly considered each of the § 3553(a) factors or to discuss each of the § 3553(a) factors"). Because the district judge considered the Chapter 7 guideline range and the § 3553(a) factors, the judge did not plainly err in imposing Smith's twelve-month sentence. Moreover, assuming without deciding that these revocation issues implicate Smith's due process rights, because no plain error has occurred, that argument is also without merit.

## III. CONCLUSION

Smith has appealed his twelve-month sentence following revocation of his supervised release. As we have explained, his allegations that the district judge failed to consider the factors in § 3553(a) and that the judge failed to provide him due process of law because he was sentenced above the applicable Guidelines range without considering Chapter 7 policy statements, the latter being raised for the first time on appeal, are unavailing. Accordingly, his twelve-month sentence is **AFFIRMED.**

11