# United States Court of Appeals
## For the First Circuit

No. 08-1834

UNITED STATES OF AMERICA,

Appellee,

v.

JESUS PEREZ-CRUZ, a/k/a Indio,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

[Hon. Daniel R. Domínguez, U.S. District Judge]

Before

Boudin, Lipez and Howard,

Circuit Judges.

Hector L. Ramos-Vega, Assistant Federal Public Defender, with whom Joseph C. Laws, Jr., Federal Public Defender, Patricia A. Garrity, Assistant Federal Public Defender, and Vivianne M. Marrero, Research and Writing Specialist, were on brief for appellant.

Luke Cass, Assistant United States Attorney, with whom Rosa Emilia Rodriguez-Velez, United States Attorney, and Nelson Pérez-Sosa, Assistant United States Attorney, Chief, Appellate Division, were on brief for appellee.

February 25, 2009

**Per Curiam**.  On November 9, 1998, Jesus Perez-Cruz pled guilty to conspiracy to distribute more than 5 kilograms of cocaine, more than 5 kilograms of cocaine base, and more than 100 kilograms of marijuana, 21 U.S.C. §§ 841(a)(1), 846 (2006).  He had also been indicted for conducting a continuing criminal enterprise involving drug trafficking which (given the quantities) pointed toward a mandatory life sentence, id. § 848(b), but as part of the plea arrangement the government dropped this count.

Perez-Cruz headed a substantial drug trafficking enterprise at a public housing project in Rio Piedras, Puerto Rico, which distributed cocaine, crack and marijuana.  The gang used violence to maintain its position, including murder.  The pre-sentence report initially assigned to Perez-Cruz specific responsibility for two separate murders and Perez-Cruz conceded involvement in at least one.

Under the applicable sentencing guidelines as described in the pre-sentence report (seemingly the 1999 edition), the drug quantity should not have mattered because the murder required a base offense level of 43,  U.S.S.G. § 2A1.1, which was adjusted by the report (up 2 levels for leadership, id. § 3B1.1(c), and down 3 for acceptance of responsibility, id. § 3E1.1) and pointed to a guideline range of 360 months to life.  Id. Sentencing Table

(1998).[1] Given his plea to the indictment, a life sentence was the permissible maximum.

However, by the plea agreement, the government agreed that Perez-Cruz should be held responsible for far lower drug quantities than were specified in the indictment. The lower quantities in the agreement pointed to a base offense level of 38, and an adjusted level of 39 (ignoring any murder but including upward adjustments for leadership and firearms (see note 1), and a downward adjustment for accepting responsibility). The government also agreed that Perez-Cruz's criminal history should be Level II, although the probation report calculated it as Level III.

With the adjustments agreed to by the government, the resulting range was 292 to 365 months, and the plea agreement recommended on behalf of both Perez-Cruz and the government a sentence of 324 months. Neither the bargained-for calculations nor the recommendations bound the district court; but, treating the sentence as an agreed-to guideline departure--this was a pre-Booker sentence--the district judge acquiesced and sentenced Perez-Cruz to 324 months.

---

[1]In the plea agreement, Perez-Cruz stipulated to a further upward adjustment of 2 levels based on the possession of firearms in connection with the offense, U.S.S.G. § 2D1.1(b)(1). For reasons that are not clear, the probation officer did not make this adjustment in his own calculation; if it were applied, the guideline sentence would have been life.

Nine years later, Perez-Cruz filed a pro se motion for reduction of sentence based on guideline amendments adjusting downward the crack cocaine guidelines.[2]  The Commission made the amendments applicable to already final sentences, a step that allows an inmate to request a re-computation of his sentence if it was based on an offense level that has subsequently been adjusted downward.  Under the governing statute, 18 U.S.C. § 3582(c)(2) (2006), the district judge is then free, although not obliged, to re-compute the sentence on motion by the inmate.

The district court denied the motion in this instance, stating that the motion relied on amendments 706 and 711, which by their terms did not apply where (as here) the offense involved multiple drug types rather than just crack cocaine alone.  Perez-Cruz, now counseled by the Federal Public Defender, appeals from this decision.  His brief argues that amendment 715, adopted after Perez-Cruz's motion but while it was pending, applies the crack reductions to cases involving multiple drugs.

The government's opposing brief in this court offers 20 pages of objections.  They include the fact that the plea was a negotiated one, that the plea agreement dropped an even more

---

[2]Bowing to widespread criticism of the 100 to 1 crack to cocaine ratio, the Commission modestly reduced the offense levels prescribed for crack at various quantity levels, starting with two amendments (706 and 711), promulgated November 1, 2007, and with a later amendment (715), promulgated May 1, 2008, extending the reduction to cases where multiple drug types were involved.

serious count and made a joint recommendation well below what Perez-Cruz would likely have faced if convicted even on the counts to which he pled, that his plea agreement included an unqualified waiver of any right to appeal the sentence (ignored by his opening brief in this court) and that he never invoked amendment 715 below and so forfeited the claim.

Putting to one side the other objections, the final one--forfeiture--is self-evident; but a forfeiture can be disregarded under plain error doctrine, assuming the necessary showings of error, plainness, prejudice and a miscarriage of justice. <u>United States</u> v. <u>Olano</u>, 507 U.S. 725 (1993). Perez-Cruz was un-counseled in the district court and we might be disposed to ignore the forfeiture--and reach the government's other objections--if any real chance existed that the district court might lower the sentence.

The government agrees that if one assumed as accurate the drug quantities stipulated as part of the plea bargain and adjusted them in accordance with amendment 715, the guideline range would be somewhat lower than the actual sentence. Yet that would be true only if one ignored the admission of at least one murder.[3] Indeed,

---

[3]One might also have to ignore other deviations from the PSR's much higher recommended guidelines range--deviations that the government was willing to make only because of the plea bargain. Apart from the murder, the prospect of a reduced guideline range appears to depend--aside from the reduction based on the newly prescribed crack guideline--on reducing the criminal history category from III to II and ignoring the firearms adjustment.

if the plea agreement's specification that Perez-Cruz intended to distribute in excess of 5 kilograms of cocaine base is taken as true, amendment 715 would not apply at all.[4]

In other words, even if the government's other legal objections could be overcome, the likelihood seems vanishingly small that the district judge would in the end be presented with a lower guideline range and then, in addition, exercise his discretion to reduce the sentence below the bargained level that Perez-Cruz achieved at the outset. Nothing in the Federal Public Defender's brief even begins to confront this difficulty: it simply takes the bargained for calculations as a starting point from which amendment 715 would prescribe a further reduction.

Even if the plea bargain or waiver of appeal do not preclude a recalculation of the sentence, it is hard to imagine that the district judge would start in re-sentencing with a baseline that was seemingly inaccurate and was accepted by the district judge only as part of a bargain that the defendant now seeks to disavow. The district judge approved the resulting sentence as reasonable in light of the bargain and, far from approving the calculations, described the sentence as a departure.

---

[4]See U.S.S.G. § 2d1.1 Application Note 10(D)(ii) ("The 2-level reduction provided in subdivision (i) shall not apply in a case in which: (I) the offense involved 4.5 kg or more, or less than 250 mg, of cocaine base . . . .").

The government's objections, apart from forfeiture, raise issues which are far-reaching and which might or might not yield a simple rule applicable in all cases. It is neither necessary nor wise to pursue them in a case where forfeiture, albeit technical, is patent and the prospect of a different outcome seems wholly implausible. There is nothing close to the showing of prejudice ordinarily needed to find plain error under <u>Olano</u>.

<u>Affirmed</u>.