**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 23-1882
_____

UNITED STATES OF AMERICA

v.

TYLER GOODNIGHT,
                                        Appellant
_____

On Appeal from the United States District Court
for the Western District of Pennsylvania
(D.C. No. 2:21-cr-00143-001)
Chief District Judge: Hon. Mark R. Hornak
_____

Submitted Under Third Circuit L.A.R. 34.1(a)
on May 1, 2025

Before: KRAUSE, BIBAS, and MONTGOMERY-REEVES, *Circuit Judges*

(Filed: May 2, 2025)

_____

OPINION[*]
_____

---

[*]   This disposition is not an opinion of the full Court and, under I.O.P. 5.7, is not binding precedent.

BIBAS, *Circuit Judge*.

Tyler Goodnight was a gang member. He was forbidden to have a gun because he had three prior convictions: one for possessing an unlicensed, stolen gun in 2016; one for possessing an unlicensed gun with an altered manufacturer number around the same time in 2016; and one for possessing heroin with intent to deliver it in 2018. Yet in 2020, police saw him with a gun. Knowing his history, they stopped him and found a loaded gun in his waistband. He pleaded guilty (without a plea agreement) to possessing a gun as a felon in violation of § 922(g)(1). He served his prison sentence and was let out on three years' supervised release.

Goodnight argues that permanently disarming him violates the Second Amendment—but he makes this argument for the first time on appeal. He acknowledges, as he must, that we review only for plain error. *See United States v. Olano*, 507 U.S. 725, 731–32 (1993). Yet he wrongly claims that he can clear plain error's high bar. An error is plain only if it is "clear or obvious, rather than subject to reasonable dispute" under existing law. *United States v. Dorsey*, 105 F.4th 526, 529 (3d Cir. 2024) (internal quotation marks omitted). Goodnight cannot cite any caselaw that makes any potential error here plain.

First, he contends that *United States v. Rahimi* made it clear that only *temporary* disarmament is constitutional under the Second Amendment. 602 U.S. 680 (2024). But *Rahimi* did not reach so far. It considered only the question before it: whether temporarily disarming someone who poses "a credible threat to the physical safety of others" was consistent with our history and tradition of gun regulations. *Id.* at 700. It left for another day broader questions about "the full scope of the Second Amendment," as Goodnight himself

admits. *Id.* at 702. And it expressly reserved the question whether "the Second Amendment prohibits the enactment of laws banning the possession of guns by categories of persons thought by a legislature to present a special danger of misuse," such as 18 U.S.C. § 922(g)(1). *Id.* at 698.

Coming up short with *Rahimi*, Goodnight is left to contend that our decision in *Range v. Attorney General* (*Range II*) clarifies that his disarmament is plainly unconstitutional. 124 F.4th 218 (3d Cir. 2024) (en banc). Not so. In *Range II*, we considered whether disarming someone with a thirty-year-old conviction for food-stamp fraud violated the Second Amendment. *Id.* at 222–23. Our Court held that the felon-in-possession statute could not apply to him. *Id.* at 222. We emphasized that our decision was a "narrow one," based on Range's individual circumstances and the lack of any sign that "Range poses a physical danger to others." *Id.* at 232. And consistent with the as-applied nature of Range's challenge, we expressly declined to "preview how this Court would decide future Second Amendment challenges" on different facts. *Id.* at 232 n.13.

*Range II* does not help Goodnight because it concerned only an as-applied challenge, and Goodnight cannot show that it is obvious that he is similarly situated to Range. That conclusion follows directly from *Dorsey*. 105 F.4th at 530. There, we applied our decision in *Range v. Attorney General* (*Range I*), 69 F.4th 96, 103 (3d Cir. 2023), to a plain-error challenge like Goodnight's. *Dorsey*, 105 F.4th at 532. And we held that the challenge failed because the defendant could not show that it was obvious "beyond dispute that he [was] similarly situated to Range for Second Amendment purposes." *Id.* at 530. That logic applies

3

all the same to our decision in *Range II*, which reaffirmed our holding in *Range I*. *Range II*, 124 F.4th at 232.

That logic also dooms Goodnight's case. For starters, Goodnight's prior convictions are meaningfully different from Range's 30-year-old food-stamp-fraud conviction. Goodnight has three very recent convictions, including one for heroin dealing and two for violating gun laws. And it is hardly obvious under our caselaw that such convictions are not themselves enough evidence of dangerousness to justify disarmament. Indeed, we have explained that drug trafficking is the kind of conviction that could justify disarmament because drug dealing risks violence. *See Pitsilides v. Barr*, 128 F.4th 203, 213 (3d Cir. 2025) (quoting *Folajtar v. Att'y Gen.*, 980 F.3d 897, 922 (3d Cir. 2020) (Bibas, J., dissenting)). Plus, the specific facts behind Goodnight's prior convictions suggest that he is dangerous. For instance, when the cops caught him with the unlicensed gun with an altered serial number, he fled and tossed the gun into a bush. He then forced his way into a neighboring home, where he tried to bribe the woman inside to stay quiet. So it is hardly self-evident that disarming Goodnight, given his prior convictions and background, even permanently, is unconstitutional under *Range II*.

To be clear, we do not foreclose the possibility that someone who is "like Range" both in his conduct and the nature and remoteness of his offense could show plain error on an as-applied challenge under *Range*. *Range II*, 124 F.4th at 232; *see Dorsey*, 105 F.4th at 530. But as-applied challenges under the Second Amendment are necessarily individualized inquiries. *Pitsilides*, 128 F.4th at 213. That is because "[a]s an original matter, the Second Amendment's touchstone is dangerousness." *Id.* at 210–11 (alteration in original)

4

(quoting *Folajtar*, 980 F.3d at 924 (Bibas, J., dissenting)). Many factors may help show dangerousness, including the nature of the predicate offense and other aspects of a person's background. *Id.* at 210–12; *see also United States v. Moore*, 111 F.4th 266, 273 (3d Cir. 2024) (looking to "facts beyond the predicate offenses" in evaluating an as-applied challenge under the Second Amendment). Thus, we must look closely at the particular facts of a person's conviction when he brings an as-applied challenge under the Second Amendment.

Goodnight's case is not the kind of Second Amendment challenge that is plain under our existing caselaw. It is hardly obvious that the Second Amendment bars permanently disarming someone with recent firearms and drug-dealing convictions like Goodnight's. So his as-applied challenge fails. For the same reason, Goodnight's facial challenge must necessarily fail too. He cannot establish that it is plain under existing caselaw that there is "no set of circumstances" under which § 922(g)(1) would be valid. *Rahimi*, 602 U.S. at 693 (quoting *United States v. Salerno*, 481 U.S. 739, 745 (1987)). We will thus affirm.