BOUDIN, Chief Judge,
concurring.
To a novice, the notion that “error” has occurred in the course of a trial or sentencing may be alarming, but anyone familiar with the work of courts understands that errors are a constant in the trial process, that most do not much' matter, and that a reflexive inclination by appellate courts to reverse because of unpreserved error would be fatal.
A federal trial can involve myriad issues of substantive law, split-second rulings on points of evidence and procedure, and (in criminal cases) a sentencing regime so complex that it is now the subject of treatises. Many legal questions have no indisputably right answer: often there is no exact precedent; statutory language or prior decisions are ambiguous;«competing policy objectives strive for supremacy; and individual district judges within the same district court can and regularly do give different answers to -the same question.
Circuit judges have more time to reflect and the advantage of more thorough briefing. Yet there are tables that set forth conflicts on numerous questions as between circuits. See, e.g., Circuit Split Roundup, 75 Crim. L. Rep. 441, 463-64 (2004) (listing circuit splits “discussed in federal appellate decisions issued in April 2004”). Like trial courts, circuit courts themselves labor under severe constraints due to the volume of cases and the complexity of the laws being administered. Law is complex because the world that it regulates is complex, but complexity makes perfection unattainable.
None of this signals any crisis. Many so-called errors have no plausible effect on the outcome of the case, and many more have only the lowest likelihood of affecting the outcome. Evidence is frequently cumulative; jury instructions may pose questions on which the jury’s decision is controlled by weighty evidence; and details in sentencing conditions may be of minimal practical importance. For this and other reasons of policy, counsel is expected to object when a judge rules adversely to the client; and objections not presented in a timely manner are ordinarily forfeited. Yakus v. United States, 321 U.S. 414, 444, 64 S.Ct. 660, 88 L.Ed. 834 (1944).
Even if an error has been forfeited, the plain error doctrine still allows reversal on appeal — but only if specific conditions are met. Although the current standard is supplied by the Supreme Court’s decision in United States v. Olano, 507 U.S. 725, 732, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993), the underlying factors would be the *225 same under any common-sense formulation: e.g., the clarity of the error, the likelihood that it affected the result, and concerns about justice (which is not the same thing as a difference in result).
It is in this context' of inevitable (but often unimportant) error that one must consider the sentencing mistake in this case, namely, a decision to let the probation officer set the' required number of drug tests instead of having the maximum number specified by the judge. Most people would probably think it entirely sensible that a probation officer, an individual familiar with the defendant while on supervised release, be the one to make such judgments in the first instance — subject always, as is the case, to the ability of the district judge to altér the number or to remedy any other unfairness of administration of a condition.
It happens that a governing decision now says that the judge should fix the maximum number, United States v. Melendez-Santana, 353 F.3d 93, 103 (1st Cir.2003), but that was a change in practice— not a requirement of a law of nature. Correcting by a remand a later instance of the same mistake, when defense counsel ignored the matter in the district court, may seem a small matter to an appellate judge in the comfort of chambers, but is a waste of time for everyone involved and especially for the district court.
The time of a judge is scarcest of all judicial resources. Every unnecessary remand is a theft of that time from cases where the dispute really matters-a theft multiplied many times over - in situations where (as in Melendez) lawyers often do not bother to object because no one notices or supposes the matter worth correcting. The dilution of plain error requirements in one case then becomes (as with Melendez) the means or excuse for a further dilution in other cases, inviting a further downward spiral.
It is improbable that even the defendant in this case really cares whether the probation officer or the judge initially sets the maximum number of tests; counsel, at taxpayer expense in most criminal appeals, raise such issues simply because they are there.' Counsel is entitled to do so; the real problem begins when judges reward such efforts by seeking to rescue forfeited errors of no importance, encouraging more such claims and more wasted time in the future.
The work of courts is not an academic exercise. See Delaware v. Van Arsdall, 475 U.S. 673, 681, 106 S.Ct. 1431, 89 L.Ed.2d 674 (1986). Judges are engaged in getting the world’s work done, implementing legal rules fairly but within a framework of settled procedural constraints — absent which the system could not function. To be inventive in extending prior precedent is a usefül capability for a judge; to be practical is a necessity.