[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No.  03-16291

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
May 16, 2006
THOMAS K. KAHN
CLERK

D.C. Docket No. 03-20064-CR-CMA

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

PETER GONZALEZ,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

**(May 16, 2006)**

Before CARNES and COX, Circuit Judges, and MILLS[*], District Judge.

MILLS, District Judge:

A jury convicted Peter Gonzalez of wire and travel fraud, in violation of 18

_____

[*] Honorable Richard Mills, United States District Judge of the Central District of Illinois, sitting by designation.

U.S.C. §§ 1343, 2314, for a scheme to defraud persons through the sale of stolen or wrongfully diverted Viagra.

He was sentenced to a total of 41 months in prison, a sentence based on a finding that Gonzalez was responsible for an amount of loss of $1,174,200.

## FACTS

On October 28, 2002, a detective from the Miami-Dade Police Department who was posing as a warehouse employee met with Gonzalez, a wholesale pharmaceutical broker. The detective told Gonzalez that he had access to Viagra that passed through a Miami warehouse. Gonzalez agreed to purchase a "hot" Viagra shipment of 155,520 pills from the detective for $3 per pill.

Gonzalez arranged to sell the stolen Viagra to a pharmaceutical vendor named Rosario Marti for $6 a pill. Marti testified that she gave Gonzalez $50,145 to separate out 3,000 bottles of Viagra and pledge not to sell it to someone else. After Gonzalez collected Marti's $50,145, he called her and said that he had an additional 2,000 bottles of Viagra for sale. Marti prepared and faxed an $874,200 purchase order to Gonzalez. She also went to Miami on two occasions to inspect the Viagra. As a prerequisite to any sale, Marti insisted that Gonzalez provide her with documents to verify that the Viagra had been legitimately acquired. But Gonzalez did not provide the necessary documents and Marti terminated the deal.

2

Thus, she forfeited the $50,145 already paid to Gonzalez.

After Gonzalez's deal with Marti blew up, he arranged to sell the Viagra to another pharmaceutical representative, Anita Gaulthier, for $6 a pill. Gaulthier met with Gonzalez and gave him two cashier's checks for $80,000 and $220,000 as payment for the Viagra. Shortly thereafter, Gonzalez was arrested.

Gonzalez was charged in an 11-count Indictment. At trial, the government's first witness, F.B.I. Special Agent Robert Peters, testified that Gonzalez, a corporate officer for Petgroop International and a wholesale pharmaceutical broker, had a license to sell and distribute prescription drugs to wholesalers who were licensed to receive the various pharmaceuticals. Agent Peters stated that he had been informed that Viagra's manufacturer, Pfizer Corporation, did not sell the drug to Petgroop. Agent Peters also testified that he set up the meeting between Gonzalez and the Miami-Dade detective. Gonzalez did not object to Agent Peters' testimony.

On August 4, 2003, a jury convicted Gonzalez on all charges except Count 10 (inducing Gaulthier to travel in interstate commerce for purposes of executing the scheme to defraud alleged in Counts 7 and 8).

After determining that Gonzalez was responsible for an amount of loss of $1,174,200—a figure based on the near-completed $300,000 Gaulthier transaction

3

and the would-be $874,200 Marti transaction—the district court sentenced Gonzalez to a total prison term of 41 months. Gonzalez objected to the inclusion of the $874,200 in the amount of loss.

On appeal, Gonzalez argues that: (1) Agent Peters' testimony was improper overview testimony because it was based on hearsay and not on testimony or evidence that was later presented at trial; and (2) the amount of loss determined at sentencing should be reduced.

## STANDARD OF REVIEW

Because Gonzalez did not object to Agent Peters' overview testimony before the district court, we review only for plain error. United States v. Rodriguez, 398 F.3d 1291, 1298 (11th Cir.), cert. denied,--- U.S. ----, 125 S.Ct. 2935, 162 L.Ed.2d 866 (2005).

We review the district court's loss calculation for clear error, but we review its application of the sentencing guidelines *de novo* . United States v. McCrimmon, 362 F.3d 725, 728 (11th Cir. 2004) (per curiam).

## ANALYSIS

Under plain error review, the Court cannot correct an error the defendant failed to raise in the district court unless there is: "(1) error, (2) that is plain, and (3) that affects substantial rights." Rodriguez, 398 F.3d at 1298 (quotation marks

4

omitted).  If all three conditions are satisfied, we may exercise our discretion to notice a forfeited error, but only if "(4) the error seriously affects the fairness, integrity, or public reputation of judicial proceedings."  Id. (quotation marks omitted); see also United States v. Olano, 507 U.S. 725, 734, 113 S.Ct. 1770, 1777, 123 L.Ed.2d 508 (1993)(same)( internal quotation marks and citations omitted).

### A.    *Overview Testimony*

The United States Court of Appeals for the First and Fifth Circuits have expressed concern about the use of overview testimony.  See United States v. Casas, 356 F.3d 104, 117-124 (1st Cir. 2004)("such testimony raises the very real specter that the jury verdict could be influenced by statements of fact or credibility assessments in the overview but not in evidence"); United States v. Griffin, 324 F.3d 330, 349 (5th Cir. 2003)(condemning overview testimony as "a tool employed by the government to paint a picture of guilt before the evidence has been introduced").  However, no United States Supreme Court decision squarely supports Gonzalez's claim and this Circuit has never resolved the propriety of overview testimony.  Thus, we cannot conclude that the district court plainly erred when it allowed Agent Peters' testimony.  See United States v. Humphrey, 164 F.3d 585, 588 (11th Cir. 1999) (no plain error given circuit split, lack of Eleventh

Circuit precedent, and absence of Supreme Court's square support).

### B. *Amount of Loss*

Next, Gonzalez contends that the district court clearly erred when it determined the amount of loss. For purposes of the Sentencing Guidelines, "loss is the greater of actual loss or intended loss." U.S.S.G. § 2B1.1 n.2(A)(Nov. 2002). The actual loss in this case was $50,145, money Marti gave to Gonzalez that was not returned to her. Id. at n.2(A)(i) ("'Actual loss' means the reasonably foreseeable pecuniary harm that resulted from the offense."). Because Gonzalez tried to sell hundreds of thousands of dollars of Viagra, the intended loss—meaning "the pecuniary harm that was intended to result from the offense; [including] intended pecuniary harm that would have been impossible or unlikely to occur"—was much greater than the actual loss. Id. at cmt. n.2(A)(ii).

To determine the intended loss attributable to Gonzalez, the district court added the $300,000 Gonzalez collected from Gaulthier and the $874,200 would-be transaction with Marti. Doing so, the district court found that the intended loss was $1,174,200.

This finding is clearly erroneous. The evidence at trial was that Gonzalez had a limited amount of Viagra to sell. He could not sell it twice. There was no evidence that, if Gonzalez had received the $874,200 from Marti, he would not

6

have delivered the drugs but would have instead offered them to Gaulthier (and collected another $300,000). Thus, "the pecuniary harm that was intended to result" from Gonzalez's offense is not the aggregate of the two sales prices. At most, it is $874,200.

## CONCLUSION

For the foregoing reasons, we affirm Gonzalez's conviction. We vacate his sentence and remand to the district court for resentencing based upon recalculation of the intended loss consistent with this opinion.

AFFIRMED IN PART; VACATED AND REMANDED IN PART.