**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 07-4003

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

versus

MARIN RUELAS-VILLALOBOS,

Defendant - Appellant.

Appeal from the United States District Court for the Eastern District of Virginia, at Alexandria. T. S. Ellis, III, Senior District Judge. (1:05-cr-00442-TSE-2)

Submitted: September 28, 2007      Decided: October 15, 2007

Before NIEMEYER and MOTZ, Circuit Judges, and WILKINS, Senior Circuit Judge.

Affirmed by unpublished per curiam opinion.

Harry Tun, Daniel K. Dorsey, Washington, D.C., for Appellant. Chuck Rosenberg, United States Attorney, Steven D. Mellin, Assistant United States Attorney, David B. Joyce, Special Assistant United States Attorney, Alexandria, Virginia, for Appellee.

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Marin Ruelas-Villalobos appeals his convictions and 240-month sentence for conspiracy to possess with intent to distribute marijuana, five or more kilograms of cocaine, and fifty grams or more of methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1), 846 (2000); possession with intent to distribute five or more kilograms of cocaine, in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2 (2000); and illegal reentry after removal for an aggravated felony, in violation of 8 U.S.C. § 1326(a), (b)(2) (2000). Ruelas-Villalobos contends the district court violated his right to a fair trial by excessively intervening in the proceedings. Finding no error, we affirm.

Because Ruelas-Villalobos did not object to the judicial intervention at trial, we review the claims for plain error. See United States v. Smith, 452 F.3d 323, 330 (4th Cir. 2006) (citation omitted). Four conditions must be met before this court will notice plain error: (1) there must be error; (2) it must be plain under current law; (3) it must affect substantial rights, typically meaning the defendant is prejudiced by the error in that it affected the outcome of the proceedings; and (4) the error seriously affected the fairness, integrity, or public reputation of judicial proceedings. United States v. Olano, 507 U.S. 725, 733-37 (1993).

Pursuant to Fed. R. Evid. 614, a district court is permitted to call witnesses on its own motion, and may interrogate any witness who testifies at trial. It is "settled beyond doubt that in a federal court the judge has the right, and often an obligation, to interrupt the presentations of counsel in order to clarify misunderstandings or otherwise insure that the trial proceeds efficiently and fairly." United States v. Morrow, 925 F.2d 779, 781 (4th Cir. 1991) (internal quotation marks omitted).

Because issues of trial management are largely left to the discretion of the district court, we review judicial interference claims with a "measure of deference" to the district court's judgment. Smith, 452 F.3d at 333. However, the trial judge must ensure that he does not create an appearance of partiality through continued intervention or interruption on behalf of one of the parties. See United States v. Godwin, 272 F.3d 659, 677 (4th Cir. 2001) (citation omitted). Ultimately, the district court must "never [reach] the point at which it appears clear to the jury that the court believes the accused is guilty, . . . or [give] the appearance of bias or partiality in any way or [become] so pervasive in his interruptions and interrogations that he may appear to usurp the role of either the prosecutor or the defendant's counsel." United States v. Parodi, 703 F.2d 768, 775-76 (4th Cir. 1983) (citations omitted). In making such a determination, we do not look at the challenged questions in

isolation, but rather examine the "demeanor and conduct of the trial judge throughout the trial" for evidence of partiality or bias sufficient to deprive the defendant of his right to a fair trial. Id. at 776.

Ruelas-Villalobos claims the district court helped to rehabilitate the Government's witnesses after they had been impeached. The Government's first witness, Patricia Triana, testified briefly regarding her translation of the Government's audio recordings from Spanish to English. Ruelas-Villalobos claims that during cross-examination, he successfully attacked the "credibility" of the translation, but that his efforts were negated when the district court called Triana back to the stand and asked her a series of additional questions. However, the district court's questions simply regarded the process used by Triana when she found words to be unintelligible. The court's inquiries were clearly intended to clarify this matter for the jury and to explain the relevance of context in making an accurate translation. See Smith, 452 F.3d at 332.

The Government's next witness, Donald Griffin, testified about Ruelas-Villalobos' presence and involvement in various meetings during which the purchase of cocaine was discussed. Ruelas-Villalobos claims the district court's questions to Griffin "tied appellant to the purchase of drugs" and that its "excessive intervention" assisted the Government in questioning the witness.

- 4 -

However, the district court's questions during direct examination were intended to produce additional details regarding the nature of the drug meetings and Ruelas-Villalobos' role, as it was unclear how much involvement he had due to his limited ability to speak English. Most of the court's questions related to clarifying which individuals were speaking on the Government's recordings of these meetings and what those individuals said, as well as establishing the context of the conversations.

During cross-examination, the district court asked questions regarding the breadth of Griffin's plea deal and his assistance to the Government. While Ruelas-Villalobos claims this "destroyed" the effectiveness of the cross-examination, the court simply inquired as to how far Griffin might go to assist his brother, who was also being prosecuted for drug distribution, as Griffin had failed to answer the question directly. See Parodi, 703 F.2d at 775. The remainder of the district court's interactions merely involved directing the witness to answer a question that had been previously asked by counsel.

As for Jesus Vega, Jr., another Government witness, Ruelas-Villalobos claims that the district court's questions helped to tie him to the drug transactions while also bolstering the credibility of the witness. However, the district court provided no such assistance to the Government's presentation; rather, the court asked Vega to repeat his answer and noted for the record that

Vega had identified Ruelas-Villalobos. See Morrow, 925 F.2d at 781. The district court also intervened on two occasions after finding the Government's questions were leading or dealt with irrelevant material, as the court restated the questions to avoid any objectionable responses. See United States v. Castner, 50 F.3d 1267, 1273 (4th Cir. 1995). Finally, the district court asked Vega, who had pled guilty, about his understanding of the Sentencing Guidelines and sentencing procedure and whether he was given any promises of a sentencing reduction. While Ruelas-Villalobos contends these questions blunted his attack on Vega's credibility, he provides no explanation or support for these conclusory allegations.

During the direct examination of Carlos Ruelas, Ruelas-Villalobos' son and the defense's first witness, the district court asked no questions; however, Ruelas-Villalobos contends the court's intervention during cross-examination had the effect of "usurping the role of the prosecutor." However, the district court's questions were brief and infrequent, as the court asked Ruelas a few questions in an attempt to clarify his testimony. Not only was this an appropriate effort by the court to ensure the facts were properly developed and understood by the jury, but Ruelas-Villalobos has failed to demonstrate that he was prejudiced by the court's actions or the witness' responses.

Ruelas-Villalobos next contends the district court excessively intervened in the examination of his other son, Marin Ruelas-Gutierrez. While Ruelas-Villalobos identifies a number of statements by the district court that he contends implicitly questioned the witness' credibility, almost all of the court's efforts involved restating and clarifying counsel's questions or asking for additional elaboration from Ruelas-Gutierrez.[1]

Finally, Ruelas-Villalobos contends the district court unnecessarily intervened during his own testimony. However, the court's involvement largely related to restating counsel's questions, often to avoid irrelevant or objectionable testimony or to direct Ruelas-Villalobos to answer a specific inquiry. See Castner, 50 F.3d at 1273. The court also asked Ruelas-Villalobos to identify the individuals speaking on a recording and to clarify certain facts regarding his personal and criminal history. Ruelas-Villalobos claims that certain questions asked by the district court may have indicated to the jury that it did not find his testimony credible. Even if the district court's questions could be read to indicate some level of skepticism or disbelief of

---

[1] During direct examination, the district court asked Ruelas-Gutierrez a series of questions regarding his father's arrival in the United States and his knowledge of the English language. Additionally, during cross-examination, the court asked Ruelas-Gutierrez whether he had previously pled guilty in Virginia to a drug offense. While this line of inquiry is generally pursued by the Government, Ruelas-Gutierrez has failed to demonstrate prejudice, much less prejudice amounting to the denial of a fair trial. See Parodi, 703 F.2d at 776.

Ruelas-Villalobos' testimony, we find that in light of the court's conduct throughout the trial and its instructions to the jury,[2] these isolated statements fail to establish any partiality or bias that would amount to reversible error, much less plain error.

Accordingly, we affirm Ruelas-Villalobos' convictions and sentence. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the court and argument would not aid the decisional process.

AFFIRMED

---

[2]During the preliminary instructions to the jury, the district court stated that nothing it may say or do during the trial should be understood as indicating what the verdict should be, as the jurors were the sole judges of the facts in the case. Additionally, during the closing instructions, the district court noted that any questions it may have asked during the trial were only meant to clarify matters and did not reflect any opinion on the issues to which the questions may have related. See Smith, 452 F.3d at 333-34; Parodi, 703 F.2d at 778.