**ALLIANCE FOR the WILD ROCKIES; Native Ecosystems Council; Wildwest Institute, Plaintiffs—Appellants,**

v.

**Abigail KIMBELL, Regional Forester of Region One of the U.S. Forest Service; Tom Clifford, in his official capacity as Forest Supervisor for the Helena National Forest; United States Forest Service, Defendants—Appellees.**

No. 06–36013.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Dec. 9, 2008.

Filed Jan. 21, 2009.

---

* The panel unanimously finds this case suitable for decision without oral argument. *See* Fed. R.App. P. 34(a)(2).

** This disposition is not appropriate for publication and is not precedent except as provided by 9th Cir. R. 36–3.

Thomas John Woodbury, Forest Defense, P.C., Rebecca Kay Smith, Public

Interest Defense Center, P.C., Missoula, MT, for Plaintiffs–Appellants.

Allen M. Brabender, Esquire, DOJ–U.S. Department of Justice, Washington, DC, Lori L. Caramanian, Trial, U.S. Department of Justice, Denver, CO, William Walter Mercer, U.S., USBI–Office of the U.S. Attorney, Billings, MT, for Defendants–Appellees.

Before: O'SCANNLAIN, GRABER, and BYBEE, Circuit Judges.

## MEMORANDUM *

This is a challenge to a decision of the United States Forest Service ("the Forest Service") to approve, by Record of Decision after an Environmental Impact Statement and a Supplemental Environmental Impact Statement ("SEIS"), a site-specific project ("the Project") in the Helena National Forest. The facts are known to the parties and are not repeated here, except as necessary to explain our decision.

## I

Plaintiff–Appellants—Alliance for the Wild Rockies, National Ecosystems Council, and the Wildwest Institute (collectively, "Plaintiffs")—first argue that the Project fails to ensure the viability of various species. Insofar as any of their challenges pertain to the underlying Forest Plan, we deem such challenges waived before the district court. See *United States v. Olano,* 507 U.S. 725, 731, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993) ("No procedural principle is more familiar . . . than that a

constitutional right, or a right of any other sort, may be forfeited [or waived] in . . . civil cases . . . ." (internal quotation marks omitted)).

Because Plaintiffs' argument that the Project fails to ensure the viability of certain species groups is not specific to any particular species, we evaluate their claims from the same, general perspective. First, Plaintiffs contend that the Project is inconsistent with the Forest Plan's requirement to manage 5% of each third-order drainage as old-growth habitat. We reject that contention because the Forest Service pointed to evidence in the SEIS, which the Plaintiffs have not rebutted, that the project would not eliminate any old-growth habitat. See *Lands Council v. Powell,* 395 F.3d 1019, 1036 (9th Cir.2005) ("Because no old growth forest is to be harvested under the Project, we hold that it cannot be said that the Project itself violates the . . . Plan's requirement to maintain [a percentage] of the forest acreage as old growth forest."); see also *WildWest Inst. v. Bull,* 547 F.3d 1162, 1174 (9th Cir.2008).

Second, Plaintiffs challenge the use of habitat monitoring of management indicator species ("MIS")—otherwise known as the "proxy-on-proxy" approach—to measuring species viability. We have previously approved of this approach in general, see *Lands Council v. McNair,* 537 F.3d 981, 996–99 (9th Cir.2008) (en banc), and the Forest Service has explained its use here and "describ[ed] the quantity and quality of habitat that is necessary to sustain the viability of the species [group] in question." *Id.* at 998. Although the Forest Service has not presented perfect information, "monitoring difficulties do not render a habitat-based analysis unreason-

* This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule. 36–3.

able, so long as the analysis uses all the scientific data currently available." *Id.* (internal quotation marks omitted).

Plaintiffs' third argument, that the Project's proposed sale of timber is arbitrary and capricious because the Forest Service has not verified its effect on old-growth habitat, relies on *Ecology Center, Inc. v. Austin*, 430 F.3d 1057 (9th Cir.2005). Sitting en banc, we have overruled *Ecology Center. See McNair*, 537 F.3d at 990. We therefore reject this ground for relief.

■ Plaintiffs next object to the Forest Service's failure to publish an internal document, a draft, produced in 1994, of a five-year review of operations in the Helena National Forest. No provision of the governing Forest Plan, the National Environmental Policy Act ("NEPA"), or the National Forest Management Act ("NFMA") requires publication of an internal review document such as this.

■ Plaintiffs also argue that the Forest Service failed to consider the best available science, as required by its own regulations, in reaching its decision regarding the Project. This argument does not appear in the Plaintiffs' complaint and they raise it for the first time on appeal. We therefore decline to consider it. *Cold Mountain v. Garber*, 375 F.3d 884, 891 (9th Cir.2004).

## II

■ The final challenge before us comes under NEPA. According to Plaintiffs, the SEIS "tiered" to an internal document, the Divide Landscape Analysis ("DLA"), which did not undergo the usual public notice-and-comment procedures NEPA requires. We have previously held that "tiering to a document that has not itself been subject to NEPA review is not permitted." *Kern v. U.S. Bureau of Land Mgmt.*, 284 F.3d 1062, 1073 (9th Cir.2002). However, the Council on Environmental Quality ("CEQ") permits "agencies to incorporate by reference certain materials to cut down on the bulk of an EIS." *Id.* (internal quotation marks omitted).

Whether a NEPA document unlawfully "tiers to" a non-NEPA document does not turn on the label the Forest Service attaches to the reference, but rather on the meaning of tiering. Under CEQ regulations, tiering

> refers to the coverage of general matters in broader environmental impact statements (such as national program or policy statements) with subsequent narrower statements or environmental analyses (such as regional or basinwide program statements or ultimately site-specific statements) incorporating by reference the general discussions and concentrating solely on the issues specific to the statement subsequently prepared.

40 C.F.R. § 1508.28.

Thus, unlawful tiering occurs when a NEPA document refers to a more general non-NEPA document in order to explain and evaluate the environmental impact of the decision in question. *See League of Wilderness Defenders v. U.S. Forest Serv.*, 549 F.3d 1211, 1218–20 (9th Cir.2008). Plaintiffs have not explained what aspect of the Project's environmental impact the SEIS ignores but the DLA discusses. Plaintiffs refer generally to the DLA's evaluation of so-called "Ecosystem Management Principles" and the DLA's encouragement that the Forest Service adopt those principles. Because there is no indication in the record that the SEIS relies on the DLA for its analysis of the environmental impact of the Project, and because Plaintiffs do not point to any such reliance, we reject their objection that the Forest Service engaged in illegal "tiering." *Cf. id.* at 1219 ("The Forest Service counters

that no deficiency exists because the omitted information about the past timber sales appears in the [non-NEPA document].").

**AFFIRMED.**