Justice Stevens,
dissenting.
The Court’s opinion fairly summarizes our “plain error” cases and shows how the Court of Appeals applied a novel standard of review. Yet while it may have taken an unusual route to get there, I find nothing wrong with the Court of Appeals’ judgment. I am more concerned with this Court’s approach to, and policing of, Federal Rule of Criminal Procedure 52(b).
I
On October 28,2000, Congress enacted the Trafficking Victims Protection Act (TVPA), 114 Stat. 1466. Respondent Glenn Marcus was convicted on two counts under the TVPA: one for sex trafficking, in violation of 18 U. S. C. § 1591(a)(1), and one for forced labor, in violation of § 1589. The indictment charged conduct that spanned from January 1999 to October 2001. See 538 F. 3d 97, 100 (CA2 2008) (per cu-riam). The evidence introduced by the Government at trial spanned from 1998 to 2003. See 487 F. Supp. 2d 289, 292-297 (EDNY 2007). Most of the evidence supporting the sex trafficking charge, and some of the evidence supporting the forced labor charge, related to discrete events that occurred before October 28, 2000.
At trial, Marcus failed to ask the judge to inform the jury that his preenaetment conduct was not unlawful, and the judge failed to give an instruction to that effect. If a request had been made, it is clear that an appropriate instruction would have been given. Indeed, it is equally clear that *268 the judge would have given such an instruction sua sponte if she had been aware of the effective date of the statute. No one disputes that error was committed in the way Marcus was charged and tried, and the error was sufficiently plain to be considered on appeal.
The record demonstrates that Marcus’ sex trafficking conviction likely violated the ex post facto rule, as applied to trial proceedings through the Due Process Clause, see ante, at 264, because the postenactment evidence appears to have been insufficient to prove guilt beyond a reasonable doubt. See 538 F. 3d, at 105-106 (Sotomayor, J., concurring). Whether his forced labor conviction is invalid for the same reason is not clear. What is clear, however, is that neither the Second Circuit nor this Court has to determine that an error of constitutional magnitude occurred for Marcus to be eligible for relief. The question under Federal Rule of Criminal Procedure 52(b) is whether the trial error was sufficiently weighty to affect “substantial rights,” and in my view this error surely was.
The Court notes that the error “created a risk that the jury would convict respondent solely on the basis of conduct that was not criminal when the defendant engaged in that conduct.” Ante, at 263. That is true, and it is of fundamental concern because imposing criminal sanctions for nonpro-scribed conduct has always been considered a hallmark of tyranny — no matter how morally reprehensible the prosecuted party.
But in addition to the very real possibility that the jury convicted Marcus of sex trafficking solely on the basis of preenactment conduct, the error created another risk: namely, that both verdicts, returned after seven days of deliberation, rested in part on the jury’s incorrect belief that the conduct before October 28, 2000, was unlawful. The error committed at trial not only prevented the jury from focusing on the relevant time period, but it also distorted the jury’s perception of Marcus’ actions. By arguing that *269 its preenactment evidence showed a violation of the TVPA, the Government effectively mischaracterized all of that evidence as descriptions of illegal behavior. And by giving the jury the impression that Marcus committed a much larger amount of criminal conduct than he really did, the error may have tipped the scales in favor of the prosecution, when the actual evidence of guilt would not have persuaded the jury to convict.
There is no need to decide whether the Government’s arguments or the trial court’s failure to give a curative instruction reached a level of unfairness sufficient to violate the Due Process Clause. For the foregoing reasons, I am convinced that the error prejudiced Marcus and seriously undermined the integrity of the proceedings. While I do not endorse the reasoning in the Court of Appeals’ opinion,* I would therefore affirm its judgment.
II
The Court does not engage the merits of that judgment, but instead remands to the Court of Appeals to apply the test we have devised for evaluating claims of “plain error.” That test requires lower courts to conduct four separate in *270 quiries, each of which requires a distinct form of judgment and several of which have generated significant appellate-court dissensus; the test may also contain an exception for “structural errors,” a category we have never defined clearly. With great concision, the Court manages to summarize all of these moving parts in about five pages. Ante, at 262-267.
Yet the language of Rule 52(b) is straightforward. It states simply: “A plain error that affects substantial rights may be considered even though it was not brought to the court's attention.” This is the mirror image of Rule 52(a), which instructs courts to disregard any error “that does not affect substantial rights.” The Federal Rules thus set forth a unitary standard, which turns on whether the error in question affected substantial rights (either in a particular defendant’s case or in the mine run of comparable cases), and they leave it to judges to figure out how best to apply that standard.
In our attempt to clarify Rule 52(b), we have, I fear, both muddied the waters and lost sight of the wisdom embodied in the Rule’s spare text. Errors come in an endless variety of “shapes and sizes.” Ante, at 265. Because error-free trials are so rare, appellate courts must repeatedly confront the question whether a trial judge’s mistake was harmless or warrants reversal. They become familiar with particular judges and with the vast panoply of trial procedures, they acquire special expertise in dealing with recurring issues, and their doctrine evolves over time to help clarify and classify various types of mistakes. These are just a few of the reasons why federal appellate courts are “allowed a wide measure of discretion in the supervision of litigation in their respective circuits.” United States v. Olano, 507 U. S. 725, 745 (1993) (Stevens, J., dissenting). This Court’s ever more intensive efforts to rationalize plain-error review may have been born of a worthy instinct. But they have trapped the appellate courts in an analytic maze that, I have increasingly *271 come to believe, is more liable to frustrate than to facilitate sound decisionmaking.
The trial error at issue in this case undermined the defendant’s substantial rights by' allowing the jury to convict him on the basis of an incorrect belief that lawful conduct was unlawful, and it does not take an elaborate formula to see that. Because, in my view, the Court of Appeals properly exercised its discretion to remedy the error and to order a retrial, I respectfully dissent.

The per curiam opinion contained a curious wrinkle, apart from misclassifying the trial error. See ante, at 264. The per curiam applied a standard from earlier Second Circuit eases that asked whether there was any possibility the jury convicted the defendant exclusively on the basis of preenaetment conduct. 538 F. 3d 97, 101 (CA2 2008) (citing United States v. Torres, 901 F. 2d 205, 229 (1990), United States v. Monaco, 194 F. 3d 381, 386 (1999), and United States v. Harris, 79 F. 3d 223, 229 (1996)). As I read the Second Circuit precedents, however, they used that standard to determine whether an ex post facto violation occurred, not to determine whether that violation warranted vacatur of the conviction pursuant to Federal Rule of Criminal Procedure 52(b). Torres is the only one of the cited cases that even considered Rule 52(b), and its holding rested on a combination of factors, including that “the defendants brought the general ex post facto question to the attention of the district court,” albeit imprecisely, and that a mandatory life sentence was imposed. 901 F. 2d, at 229. It is thus unclear why the Court of Appeals believed itself foreclosed from conducting a regular “plain error” review.