[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 18-14805
Non-Argument Calendar

_____

D.C. Docket No. 1:18-cr-20368-KMW-2

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

versus

FRANCEL RODRIGUEZ,

Defendant - Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(February 28, 2020)

Before WILSON, WILLIAM PRYOR and JILL PRYOR, Circuit Judges.

PER CURIAM:

Defendant Francel Rodriquez was convicted of one count of conspiring to commit health care fraud, in violation of 18 U.S.C. § 1349, and sentenced to 60 months' imprisonment.  He now appeals both his conviction and sentence, arguing that the district court erred at trial in instructing the jury on deliberate ignorance and at sentencing in imposing an aggravating-role enhancement.  After careful consideration, we conclude that there was no reversible error and thus affirm.[1]

I.

Rodriguez argues for the first time on appeal that the district court erred when it instructed the jury on deliberate ignorance because the instruction misstated the law.  "We review jury instructions challenged in the district court *de novo* to determine whether the instructions misstated the law or misled the jury to the prejudice of the objecting party."  *United States v. Gibson*, 708 F.3d 1256, 1275 (11th Cir. 2013) (internal quotation marks omitted).  But when, as here, a party challenges a jury instruction for the first time on appeal, we review for plain error only.  *Id.*[2]  "We will not reverse a defendant's conviction based on a challenge to the jury charge unless we are left with a substantial and ineradicable

---

[1] Because we write only for the parties, we set out only what is necessary to address Rodriguez's arguments.

[2] To show plain error, the defendant bears the burden of showing that (1) the district court erred; (2) its error was plain; (3) the error affected the defendant's substantial rights; and (4) the error "seriously affect[ed] the fairness, integrity or public reputation of judicial proceedings." *United States v. Olano*, 507 U.S. 725, 732 (1993) (internal quotation marks omitted).

doubt as to whether the jury was properly guided in its deliberations." *Id.* (internal quotation marks omitted). "When the jury instructions, taken together, accurately express the law applicable to the case without confusing or prejudicing the jury, there is no reason for reversal even though isolated clauses may, in fact, be confusing, technically imperfect, or otherwise subject to criticism." *Id.* (internal quotation marks omitted).

Turning to Rodriguez's challenge to the district court's jury instruction regarding deliberate ignorance, it is well established that the government may show a defendant acted with knowledge by proving beyond a reasonable doubt that he was deliberately ignorant. *See United States v. Jeri*, 869 F.3d 1247, 1268 (11th Cir. 2017) (internal quotation marks omitted). To establish deliberate ignorance, the government must prove that the "defendant was aware of a high probability of the existence of the fact in question and purposely contrived to avoid learning all of the facts in order to have a defense in the event of a subsequent prosecution." *Id.* (internal quotation marks omitted).

Specifically, Rodriguez argues that the district court misstated the law about deliberate ignorance. The district court gave the following instruction about deliberate ignorance:

> So, with respect to the issue of the defendant's knowledge in this case, if you find from all the evidence beyond a reasonable doubt that the defendant believed that he participated in a scheme or artifice to defraud Blue Cross [] and deliberately and consciously tried to avoid

3

learning that there was a scheme or artifice to defraud Blue Cross [] in order to be able to say, if apprehended, that he was unaware of the scheme to defraud Blue Cross [], you may treat such deliberate avoidance of positive knowledge as the equivalent of knowledge.

In other words, you may find that the defendant acted knowingly if you find beyond a reasonable doubt either the defendant actually participated in a scheme or artifice to defraud a health care benefit program; or that he deliberately closed his eyes to what he had every reason to believe was the fact.

Doc. 101 at 16.[3]  On appeal, Rodriguez argues that the district court's instruction failed to inform the jury that it had to find beyond a reasonable doubt that Rodriguez (1) subjectively believed that there was a scheme to defraud Blue Cross and (2) had taken conscious and deliberate actions to avoid knowledge.  Because the jury never was told that it had to find beyond a reasonable doubt that he subjectively believed there was a scheme to defraud Blue Cross, Rodriguez argues, the instruction allowed the jury to convict him if it found that he was merely reckless.[4]

---

[3] Citations in the form "Doc. #" refer to the numbered entries on the district court's docket.

[4] In the district court Rodriguez raised a different challenge to the deliberate ignorance jury instruction.  At the charge conference, Rodriguez argued that the instruction was not warranted because the government had relied on the theory that Rodriguez had actual knowledge and introduced no evidence indicating that he avoided learning about the fraud or conducted business in a way to shield himself from knowledge about the fraud.

We do not address whether a deliberate ignorance was warranted under the facts of this case because Rodriguez abandoned this argument on appeal.  "We have long held that an appellant abandons a claim when he either makes only passing references to it or raises it in a perfunctory manner without supporting arguments and authority." *Sapuppo v. Allstate Floridian Ins. Co.*, 739 F.3d 678, 681 (11th Cir. 2014).  In his initial brief, Rodriguez made, at best, passing references to the argument that the evidentiary record did not support the deliberate

We conclude that the district court correctly stated the law. The court instructed the jury about both requirements for deliberate ignorance when it stated that the jury could conclude Rodriguez acted with deliberate ignorance only if it found "from all the evidence beyond a reasonable doubt that the defendant believed that he participated in a scheme or artifice to defraud Blue Cross [] and deliberately and consciously tried to avoid learning that there was a scheme or artifice to defraud Blue Cross." *Id.*[5] Because this instruction covered both elements required for deliberate ignorance, we reject Rodriguez's argument that the district court misstated the law by allowing the jury to convict based upon a

ignorance instruction. The brief included a heading stating that "[t]he government did not introduce any evidence of active efforts to avoid knowledge," but this section contained only two sentences, discussed no relevant facts or law, and merely served as background to his main argument that the jury instruction misstated the law. Appellant's Br. at 44. Two other sentences under different headings in the initial brief also mentioned the issue of whether the instruction was warranted. But, again, these conclusory sentences merely served as background to the separate argument that the jury instruction misstated the law. After the government pointed out in its response brief that Rodriguez had abandoned this argument, Rodriguez filed a reply brief in which he cited authority to support it. But his attempt to develop this argument with supporting arguments and authority in his reply brief "come[s] too late." *Sapuppo*, 739 F.3d at 683. The relevant question is whether Rodriguez adequately developed in his initial brief the argument that a deliberate ignorance instruction was not warranted under the facts of the case. Because he raised the issue in a perfunctory manner in his initial brief without supporting arguments or authority, he abandoned it. *See id.*

[5] In the second paragraph of its deliberate ignorance instruction, the court emphasized the requirement that Rodriguez had to deliberately and consciously take actions to avoid knowledge when it instructed the jury that deliberate ignorance required a finding that Rodriguez "deliberately closed his eyes to what he had every reason to believe was the fact." Doc. 101 at 16. It's true that in this paragraph the district court did not mention the other element required to find deliberate ignorance—that Rodriguez subjectively believed that he was participating in a scheme to defraud Blue Cross. But we cannot say that this instruction was misleading when in the immediately preceding sentence the district court instructed the jury about the subjective knowledge requirement.

5

determination that Rodriguez acted with reckless indifference to the truth. We thus see no error, much less plain error.

## II.

Rodriguez also challenges his sentence, arguing that the district court erred in applying a three-level enhancement to his offense level on the basis that he was a manager or supervisor. We review for clear error a district court's decision to impose an aggravating-role enhancement at sentencing. *United States v. Sosa*, 777 F.3d 1279, 1300 (11th Cir. 2015). Review for clear error is deferential, and we will not disturb a district court's findings unless we are left with a definite and firm conviction that a mistake has been made. *Id.*

The Sentencing Guidelines provide for a three-level enhancement in offense level "[i]f the defendant was a manager or supervisor (but not an organizer or leader) and the criminal activity involved five or more participants or was otherwise extensive." U.S.S.G. § 3B1.1(b). For the enhancement to apply, the defendant must exert "some degree of control, influence, or leadership" in the criminal conspiracy. *United States v. Ndiaye*, 434 F.3d 1270, 1304 (11th Cir. 2006) (internal quotation marks omitted). The commentary to the Guidelines directs a court, in assessing a defendant's role, to consider the following factors: (1) whether he exercised decision-making authority, (2) the nature of his participation in the commission of the offense, (3) whether he recruited

accomplices, (4) whether he claimed a right to a larger share of the fruits of the crime, (5) his degree of participation in planning or organizing the offense, (6) the nature and scope of the illegal activity, and (7) the degree of control and authority he exercised over others. U.S.S.G. § 3B1.1 cmt. n.4. This multi-factor analysis requires a district court to decide on a "case-by-case basis," under the totality of the circumstances, whether the enhancement should apply. *See United States v. Ramirez*, 426 F.3d 1344, 1356 (11th Cir. 2005). There is no requirement that all the considerations have to be present for the enhancement to be applied. *Id.*

The district court committed no clear error in finding that Rodriguez acted as a supervisor or manager.[6] When the circumstances are viewed in totality, several of the relevant factors—including the nature of Rodriguez's participation, his place in the chain of command, his recruitment of an accomplice, and the fact that he claimed a larger share of the fruits of the crime than others—support the conclusion that he functioned in a managerial or supervisory role.[7]

---

[6] Because there is no dispute in this case that the criminal activity involved five or more participants, we focus our analysis on whether Rodriguez functioned as a manager or supervisor.

[7] We do not address each of the seven factors because there is no requirement that all factors be present for the enhancement to apply. *See Ramirez*, 426 F.3d at 1356. Indeed, our prior decisions demonstrate that we may affirm the application of this enhancement without addressing whether each factor supported the enhancement. *See id.* (concluding that enhancement was warranted given the defendant's nature of participation in the criminal conduct, the scope of the criminal activity, and the degree of control and authority that he exercised over others without addressing the remaining four factors).

7

The nature of Rodriguez's participation indicates that he exercised some degree of control or leadership.  To understand his role in the scheme, we must briefly review how the healthcare fraud scheme worked.  Rodriguez's employer, Billing USA, was a medical billing company that prepared and submitted claims for health care provider clients to private insurers, including Blue Cross.  Although it is legitimate for a medical provider to contract with a billing company to prepare and submit its insurance claims, Billing USA's business was illegitimate because the company contracted with medical providers to submit claims for reimbursement knowing that the services reflected in the claims were never provided.

Billing USA assisted medical providers in submitting fraudulent medical claims in two distinct ways.  First, some of Billing USA's clients sent the company fraudulent superbills, which were statements listing the dates when particular patients purportedly received medical services from the clients.  Even though Billing USA knew that the providers had not provided the services to the patients listed in the superbills, Billing USA prepared claims based on the superbills and submitted the claims to Blue Cross.  For its role in preparing and submitting the claims, Billing USA charged the medical providers a fee equal to 6% of the amount Blue Cross paid on the claims.

8

Second, for the majority of its medical provider clients, Billing USA played an even more active role in the fraud. These medical providers brought Billing USA billing information for prospective patients. Billing USA then fabricated superbills—statements purporting to identify the dates and treatments a patient received from the provider—reflecting that patients had received expensive treatments from the providers. When Billing USA created superbills, it invented the patients' diagnosis codes, the dates they were treated, and the services they received. Billing USA then sent copies of the superbills to the providers so that the providers could create fraudulent records in their patient files showing that the patients had received the treatments listed in the superbills. Based on the superbills, Billing USA prepared and submitted claims to Blue Cross on the providers' behalf. For its services, Billing USA charged these medical providers a fee equal to 10% of the amount that Blue Cross paid on the claims.

Rodriguez played a central role in Billing USA's creation of the fraudulent superbills. Although Billing USA's founder, Danny Palma, created many of the fraudulent superbills, he also relied on a small group of employees, including Rodriguez, to create them. When Rodriguez created fraudulent superbills, he simply made up the services that were included on the superbills. After he prepared the superbills, he would direct other employees to prepare the claims based on the superbills and submit them to Blue Cross.

9

In addition, Rodriguez acted as Palma's right-hand man at Billing USA. Palma frequently traveled and left Rodriguez in charge of overseeing "every aspect" of the business. Doc. 98 at 126. Rodriguez also was in charge of the accounting for Billing USA, including making sure that Billing USA collected a higher fee from the medical providers for whom it created fraudulent superbills. In addition, Rodriguez fielded complaints from medical providers who relied on Billing USA to create superbills when insurance companies questioned the providers' claims. Taken together, this evidence supports an inference that Rodriguez exercised some control or leadership in the scheme.

The evidence also indicates that Rodriguez recruited at least one accomplice. He introduced Sergio Carratala to Palma and recommended Carratala for a job with Billing USA. Upon joining the company, Carratala also participated in the scheme by creating fraudulent superbills.

In addition, the evidence supports an inference that Rodriguez claimed a right to a larger share of the proceeds than other participants. When one of Billing USA's clients paid bonuses to Billing USA employees, Rodriguez received $6,000. In contrast, other Billing USA employees received only $500.

Rodriguez nonetheless argues that he was not a supervisor or manager because he played a smaller role in the scheme and received a far smaller share of proceeds from the scheme than Palma. We agree that Palma played a larger role in

10

the conspiracy and profited more from the scheme.   But an enhancement may be warranted based on the defendant's role in the offense "[e]ven though others may have had a larger role in the conspiracy." *Ndiaye*, 434 F.3d at 1304.  And here the record reflects that the Rodriguez exercised sufficient authority to qualify as a manager or supervisor.

After reviewing the record, we are left with no definite and firm conviction that the district court clearly erred in applying the enhancement.  We thus affirm Rodriguez's sentence.

III.

For the reasons set forth above, we affirm Rodriguez's conviction and sentence.

**AFFIRMED.**