# Supreme Court of Texas

## No. 24-0183

Borusan Mannesmann Pipe US, Inc.,

*Petitioner*,

v.

Hunting Energy Services, LLC,

*Respondent*

On Petition for Review from the
Court of Appeals for the Fourteenth District of Texas

**PER CURIAM**

The parties to this lawsuit—Borusan Mannesmann Pipe US, Inc. and Hunting Energy Services, LLC—dispute which of them must indemnify the other for defective pipes sold to a third party. The trial court rendered a declaratory judgment in favor of Hunting. The court of appeals held that Borusan inadequately briefed and thus forfeited its indemnity argument, which the court therefore refused to consider. We reverse and remand for the court of appeals to reach the merits.

Borusan manufactures steel pipes. Hunting offers a service whereby it expands pipes (a process called "swaging") and connects them (a process called "threading"). Borusan hired Hunting to swage and

thread its pipes. Borusan then sold the threaded pipes to a third-party pipe distributor, Sooner Pipe LLC.

Central to the case are the competing terms found in the parties' purchase orders and invoices. After Sooner placed its order with Borusan, Borusan wrote purchase orders to Hunting for its connectors used to thread the pipes. These purchase orders included Borusan's terms and conditions that, among other things, required Hunting to indemnify Borusan for any pipe defects. The purchase orders also stated that "[a]ny additional or differing terms or conditions contained in any documents issued by [Hunting] . . . shall not become a part of the Purchase Order and are hereby rejected by [Borusan] unless expressly agreed upon in writing by an authorized representative of [Borusan]." Borusan delivered its pipes to Hunting, which swaged and threaded them and then delivered them to Sooner. Set against Borusan's purchase orders were Hunting's invoices, which it sent to Borusan after making the delivery to Sooner. Hunting's invoices to Borusan stated that *Hunting's* "terms and conditions apply as stated at Hunting-Intl.com."

The battle of the forms did not end there. Borusan sent invoices to Sooner, stating that delivery was "[s]ubject to Borusan[]'s standard terms and conditions" *and* "[s]ubject also to Hunting['s] general terms and conditions of sale," all of which were attached. Hunting's terms and conditions contained an indemnification clause, which stated in all caps that "buyer shall be liable for, and shall defend, indemnify and hold harmless seller . . . from and against any and all claims which arise out of the performance of the contract."

This litigation stems from Sooner's eventual pipe sales to Concho

2

Resources, Inc. Concho discovered holes in the pipes it was using to drill wells, which caused it to abandon the wells and ultimately resulted in significant damages. Borusan and Hunting blamed each other for the defective pipes. Hunting sued Borusan, asserting causes of action for breach of contract, negligence, fraud, negligent misrepresentation, and breach of warranty. It also sought a declaratory judgment that Borusan must indemnify it. Borusan counterclaimed for breach of contract and breach of warranty and sought a declaratory judgment that Hunting must indemnify it.

The trial court ultimately ruled for Hunting on all issues except attorney's fees and signed a partial judgment to that effect. As relevant to this appeal, the court concluded that Hunting was entitled to a declaratory judgment that it had no obligation to indemnify Borusan and that Borusan was required to indemnify Hunting.

The partial judgment recounts that the court "finds" that "[t]he Purchase Orders from [Borusan] to Hunting and the Invoices from Hunting to [Borusan]," along with all corresponding purchase orders and invoices between Borusan and Sooner, were "valid and enforceable contracts" that were "the commercial documents that govern[ed] the relationship between the parties." Borusan requested separate findings of fact and conclusions of law pursuant to Rules of Civil Procedure 296 and 297. The trial court then issued sixty-five findings of fact and twenty-four conclusions of law. These findings included that the invoices Hunting sent to Borusan and the purchase orders from Borusan to Sooner were "the commercial documents that govern[ed] the relationship between the parties," but the court did not separately

3

include a finding or conclusion that the invoices Hunting sent to Borusan were valid and enforceable contracts. Six months later, the trial court signed a final judgment identical to the partial judgment (i.e., including the valid-and-enforceable-contract finding), which also included an award of attorney's fees to Hunting.

Borusan appealed. Relevant here is Borusan's argument that "the trial court reversibly erred when it held that Borusan must indemnify Hunting." The court of appeals held that Borusan forfeited this argument by inadequately briefing whether the invoices Hunting sent to Borusan were valid and enforceable contracts. ___ S.W.3d ___, ___, 2023 WL 5487433, at *10 (Tex. App.—Houston [14th Dist.] Aug. 24, 2023).[1] The court stated that Borusan "cite[d] no authority in support of its argument that it does not owe Hunting contractual indemnity and provide[d] no legal analysis as to why the invoices are not valid and enforceable contracts." *Id.* The court "decline[d] to perform the research and analysis" that it believed Borusan failed to provide. *Id.* (citing TEX. R. APP. P. 38.1(i) ("The brief must contain a clear and concise argument for the contentions made, with appropriate citations to authorities and to the record.")).

Borusan moved for rehearing, which the court of appeals denied. Borusan petitioned this Court for review, challenging only the court of

---

[1] The court of appeals and the parties describe the purported briefing inadequacy as "waiver." As we recently noted in *Bertucci v. Watkins*, what is at issue here is "forfeiture," which is the "failure to make the timely assertion of a right." 709 S.W.3d 534, 541 n.5 (Tex. 2025) (quoting *United States v. Olano*, 507 U.S. 725, 733 (1993)). By contrast, "waiver" involves an "*intentional* relinquishment or abandonment of a known right." *Id.* (emphasis added) (quoting *Olano*, 507 U.S. at 733). The distinction is significant in some circumstances, but the term "waiver" is often used to cover forfeiture as well, especially when, as here, the analysis does not turn on the distinction.

appeals' holding that it had forfeited its indemnity argument.

The trial court's interlocutory and final judgments each included—but its separate findings of fact and conclusions of law omitted—the court's determination that the contracts were valid and enforceable. The court of appeals referred to this seemingly legal determination as a "finding of fact." *See id.*[2] In this Court, the parties appear to accept this characterization, and neither party disputes that Borusan bore the burden of lodging a sufficient challenge to the "finding of fact" before the court of appeals. For purposes of today's decision, therefore, we likewise assume this to be true. Based on that premise, Borusan challenges the court of appeals' conclusion that Borusan has forfeited its challenge to the finding. The dispute therefore reduces to whether Borusan adequately briefed why the invoices are not valid and enforceable contracts.[3]

---

[2] Specifically, if the determination constitutes a "finding of fact," then Rule 299a applies, which is why the court of appeals discussed and applied that rule. The rule states that "[f]indings of fact must not be recited in a judgment." TEX. R. CIV. P. 299a. The rule then says that "[i]f there is a conflict between findings of fact recited in a judgment in violation of this rule and findings of fact made pursuant to Rules 297 and 298, the latter findings will control for appellate purposes." *Id.* The court of appeals interpreted this rule to mean that the finding made *later in time* would control. *See* ___ S.W.3d at ___, 2023 WL 5487433, at *10 ("[T]he trial court's finding in the judgment controls because the judgment was issued after its findings of fact and conclusions of law." (citing TEX. R. CIV. P. 299a)). The rule's reference to the "latter findings" (as opposed to later findings), however, points to "findings of fact made pursuant to Rule 297 and 298." In any event, because neither party has contested the court of appeals' approach, we need not resolve any discrepancy between it and Rule 299a.

[3] We likewise note but express no view regarding a related issue that appears to have generated division in the lower courts. Specifically, when a

5

In *Bertucci v. Watkins*, we recently reaffirmed our general disapproval of summarily dismissing issues based on procedural defects and encouraged resolving cases on the merits instead. 709 S.W.3d 534, 542-43 (Tex. 2025); *see also, e.g.*, *Perry v. Cohen*, 272 S.W.3d 585, 587 (Tex. 2008) ("[A]ppellate courts should reach the merits of an appeal whenever reasonably possible."). Of course, an issue *can* be forfeited or waived, but a finding of insoluble forfeiture or waiver should be a last resort. We think that, as in *Bertucci*, Borusan's brief preserved the issue by adequately challenging the trial court's determination that there is no valid and enforceable contractual basis to require it to indemnify Hunting.

As Borusan points out, its brief presented roughly five pages of argument on the issue of why it did not agree to indemnify Hunting. It argued, for example, that its terms and conditions stated that they were the only terms between the parties, meaning that the terms in Hunting's invoices never formed part of the agreement in the first place. Specifically, it argued that no evidence "reflect[ed] that Borusan ever bound itself to the Hunting" terms and conditions because, among other things, it never "expressly agreed to them in writing." These arguments, along with others in Borusan's brief in the court of appeals, constitute

---

trial court violates Rule 299a by adding findings in a final judgment, some courts of appeals appear to disregard the findings altogether, which leads to affirmance on any basis supported by the record. *See, e.g.*, *R.S. v. B.J.J.*, 883 S.W.2d 711, 715 & n.5 (Tex. App.—Dallas 1994, no writ). Other courts hold that "findings in a judgment have probative value as long as they do not conflict with those in a separate document." *See, e.g.*, *Hill v. Hill*, 971 S.W.2d 153, 157 (Tex. App.—Amarillo 1998, no pet.). We reserve any resolution of the apparent division in the lower courts for a future case that properly implicates it.

challenges to the "finding" that Hunting's invoices were valid and enforceable contracts. They preserve Borusan's key appellate issue.

The court of appeals noted that Borusan's briefing did not contain case law or statutory citations. But Borusan provided ample record citations, including of documents, testimony, and the trial court's findings of fact and conclusions of law. Not every issue in a party's brief will rely on guidance from cases or statutes. Although we agree that it will be rare that *no* case or statute would be useful to cite, there is no inherent minimum quotient of statutory or case-law citations that must be met before a brief can be found to adequately preserve an issue. A party need not conjure up marginally related statutes or cases just to avoid a finding of forfeiture. *See* TEX. R. APP. P. 38.1(i) (requiring "*appropriate* citations to authorities and to the record" (emphasis added)).

On the other hand, the difference between preserving an issue and pressing that issue persuasively can be significant. As we noted in *Bertucci*, sometimes "briefing may be adequate to preserve an issue but insufficient to properly assist an appellate court." 709 S.W.3d at 542. In such cases, a court may order additional briefing under Rule of Appellate Procedure 38.9(b) to "assist it in performing its function," *id.*, or it may resolve the case on the merits in light of the briefing it already has, *see id.* at 542 n.9 ("[I]f the briefing does not make arguments the court finds persuasive, its decision on an issue may reflect that failure."). Rule 38.9's authorization of supplemental briefing "provides a tool to assist the court in performing its appellate function; it does not burden the court with an obligation to allow a party an additional bite at the briefing apple." *Id.*

7

On remand, therefore, the court of appeals may order supplemental briefing if it identifies specific deficiencies in Borusan's briefing that, if remedied, would assist the court. Or it may simply resolve the case on the merits with the briefing before it. The court certainly is not obligated itself to perform, and is indeed forbidden from performing, the task of litigating the case on any party's behalf. But it was error to deem Borusan's appellate issue forfeited and thus incapable of a merits resolution.

We therefore hold that Borusan did not forfeit its argument that the trial court erred when it rendered a declaratory judgment requiring Borusan to indemnify Hunting. Accordingly, without hearing oral argument, we grant the petition for review, reverse the court of appeals' judgment, and remand the case to the court of appeals to consider the issue on the merits. *See* TEX. R. APP. P. 59.1, 60.2(c).

**OPINION DELIVERED:** June 27, 2025