**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 24-1002
_____

UNITED STATES OF AMERICA

v.

STEPHANIE BARNES,
                                        Appellant
_____

On Appeal from the District Court
of the Virgin Islands
(District Court Criminal No. 3:19-cr-00047-002)
District Judge: Honorable Robert A. Molloy
_____

Submitted Pursuant to Third Circuit L.A.R. 34.1(a)
on April 29, 2025

Before: RESTREPO, FREEMAN, and MCKEE, *Circuit Judges*.

(Filed: September 12, 2025)
_____

OPINION[*]
_____

RESTREPO, *Circuit Judge*

Appellant Stephanie Barnes was convicted at trial of three counts: conspiracy to defraud

the United States in violation of 18 U.S.C. § 371; receipt of stolen government property in

---

[*] This disposition is not an opinion of the full Court and, pursuant to I.O.P. 5.7, does not constitute binding precedent.

violation of 14 V.I.C. § 895; and filing a false tax return in violation of 33 V.I.C. § 1525(1). Barnes was found guilty of stealing government funds while working for the Virgin Islands Casino Control Commission ("VICCC") as a contractor specializing in problem gambling.

In this appeal, Barnes: (1) disputes the sufficiency of the evidence for the federal programs theft count; (2) argues that the District Court wrongly instructed the jury as to the same count; and (3) contends that her sentence was procedurally unreasonable. Because none of these arguments are availing, we will affirm.

I.    **Background**[1]

Barnes was hired as a contractor by the chairman of the VICCC, Violet Anne Golden, with whom Barnes had a preexisting personal relationship. Per her contract with the VICCC, Barnes was to be paid between $200 and $350 per hour for consulting services and $250 per attendee when leading training sessions. The Government alleged that the terms of this contract dramatically overpaid Barnes, and that Barnes lied about the number of attendees at her training sessions to further enrich herself. In addition, the Government alleged that Barnes used VICCC funds for personal expenses and exorbitant travel, including staying at the Ritz Carlton and chartering a plane. The Government also alleged that Golden amended Barnes' 2016 Form 1099 to allow Barnes to cheat on her taxes.

Barnes was charged in a thirty-one-count superseding indictment, but only three counts remained at trial: Count Five (conspiracy to defraud the United States in violation of 18

---

[1] Since we write primarily for parties already familiar with this case, we include only those facts necessary to reach our conclusion.

U.S.C. § 371); Count Twenty-Three (receiving government property in violation of 14 V.I.C. § 895(b)); and Count Thirty (filing a false tax return in violation of 33 V.I.C. § 1525(1)).

At trial, Barnes was convicted on all three counts. As to Count Five, the District Court sentenced Barnes to 33 months of imprisonment, three years of supervised release, a $10,000 fine, and $247,489.93 in restitution. In calculating the Guidelines range for this count, the District Court applied a twelve-level enhancement for a loss amount between $250,000 and $550,000, having determined a loss amount of $282,315.68. Barnes now appeals.

## II. **Discussion**

### A. *The Sufficiency of the Evidence for Count Five*

Count Five charged Barnes with conspiring with Golden to violate 18 U.S.C. § 666, which establishes federal jurisdiction over theft, embezzlement, and fraud committed by "an agent of an organization, or of a State, local, or Indian tribal government, or any agency thereof" of $5,000 or more in property owned by or under the care, custody, or control of said entity.[2] 18 U.S.C. § 666(a). In order for Section 666 to apply, "the organization, government, or agency" that was wronged must have "receive[d], in any one[-]year period, benefits in excess of $10,000 under a Federal program involving a grant, contract, subsidy,

_____

[2] The term "agent," as used in § 666(a), "means a person authorized to act on behalf of another person or a government and, in the case of an organization or government, includes a servant or employee, and a partner, director, officer, manager, and representative." 18 U.S.C. § 666(d)(1).

loan, guarantee, insurance, or other form of Federal assistance." *Id*. § 666(b). The Government's theory at trial was that Golden, Barnes' co-conspirator, was an agent of the Virgin Islands Government, which received more than $10,000 in federal program funds.

On appeal, Barnes contends that the evidence against her was insufficient to support a conviction for three reasons: (1) Golden was only an agent of the VICCC, not the Virgin Islands Government; (2) Golden misappropriated VICCC funds, not Virgin Islands Government funds; and (3) the Government failed to prove that federal funds received by the Virgin Islands Government were federal benefits. We find none of these arguments convincing.[3]

### a. Agency

Barnes' first contention on appeal is that there was insufficient evidence to conclude that Golden was an agent of the Virgin Islands Government. The parties disagree as to whether Barnes preserved this argument before the District Court, with Barnes arguing for plenary review and the Government for plain error review. We need not reach this issue because the evidence was sufficient under either standard of review.

When applying plenary review to the denial of a motion for judgment of acquittal based on the sufficiency of the evidence, we "review the evidence in the light most favorable to the Government, afford deference to a jury's findings, and draw all reasonable inferences

---

[3] Barnes also argues that because the District Court "lacked subject matter jurisdiction over Count [Five]," it therefore had "no concurrent jurisdiction to prosecute local offenses." Appellant's Br. at 46. Because we find the evidence was sufficient to sustain a conviction as to Count Five, we do not reach this argument.

in favor of the jury verdict." *United States v. Fountain*, 792 F.3d 310, 314 (3d Cir. 2015) (cleaned up).

To conclude that Golden was an agent of the Virgin Islands Government as defined in § 666, the jury needed to find that Golden was "a person authorized to act on behalf of" the Virgin Islands Government, including as "a servant or employee, [or] a partner, director, officer, manager, [or] representative." 18 U.S.C. § 666(d)(1). A rational jury could reach this conclusion. Among other things, the jury heard that Golden was part of the Government Employees' Retirement System, and that as VICCC Commissioner Golden had the authority to direct the VICCC "to bring a civil action . . . in the name of [the Virgin Islands Government]" to collect overdue fees owed pursuant to the Virgin Islands Casino Control Act. A rational jury could conclude on these grounds that Golden, as VICCC Commissioner, was an agent of both the VICCC and the Virgin Islands Government.

### b. *Virgin Islands Government Funds*

Barnes next argues that Golden did not misappropriate Virgin Islands Government funds, but instead funds of the VICCC, which is "administratively and financially independent from the [Virgin Islands] Government." Appellant's Br. at 34. This argument is unavailing, as a rational jury had ample reason to believe that the VICCC funds misappropriated by Golden were also Virgin Islands Government funds. The VICCC is "an independent agency of the executive branch of the Government of the Virgin Islands, whose budget shall be approved annually by the Legislature of the Virgin Islands." 32 V.I.C. § 404. The finances of the VICCC and other Virgin Islands Government branches

5

are interrelated: the Casino Control Revolving Fund is "disbursed by the Casino Control Commission and the Attorney General of Virgin Islands, exclusively for expenditures by the Casino Control Commission and the Department of Justice, Division of Gaming Enforcement respectively," with 20% of the fund allocated to the Division of Gaming Enforcement. 32 V.I.C. § 514. The funds specifically reserved for the VICCC remain under the oversight of the Department of Finance and the Virgin Islands Legislature, which are owed regular reports and audits on the VICCC's financial activities.

On this factual record, a rational jury could conclude that the misappropriated funds were "owned by, or . . . under the care, custody, or control" of the Virgin Islands Government. 18 U.S.C. § 666(a)(1)(A)(ii).

### c. *Federal Benefits*

Barnes next argues that there was insufficient evidence at trial to conclude that the federal funds received by the Virgin Islands Government were "benefits in excess of $10,000 under a Federal program involving a grant, contract, subsidy, loan, guarantee, insurance, or other form of Federal assistance" as required by 18 U.S.C. § 666(b). Barnes notes that the Supreme Court held in *Fischer v. United States* that "benefits," as used in Section 666(b), is not employed in a "broad, almost limitless use of the term" that would encompass "[a]ny receipt of federal funds." 529 U.S. 667, 681 (2000). *Fischer* identified instances in which the receipt of federal funds might not constitute a benefit under Section 666, such as payments made solely for the purpose of compensation or reimbursement. *Id.* at 679. The Court noted that, for example, Congress did not intend to apply Section 666 to a theft from a supplier from whom a government agency had purchased more than

6

$10,000 in equipment. *Id.* To ensure Section 666 was not applied in such an expansive manner, the Court held that "[t]o determine whether an organization participating in a federal assistance program receives 'benefits,' an examination must be undertaken of the program's structure, operation, and purpose." *Id.* at 681.

Here, there was not extensive evidence elucidated concerning the structure, operation, and purpose of the funds received by the Virgin Islands Government. But this was so because the funds were a classic form of federal assistance—not mere compensation or reimbursement—well within the scope of § 666. At trial, the jury heard that the Virgin Islands Government "receives approximately $6 million block grant [sic] each and every year" through its Department of Human Services, and that in each year from 2016 to 2019 "the federal government provide[d] more than $10,000 in grants to the Virgin Islands Government." JA1355–56. This direct grant funding clearly suffices to meet § 666(b)'s requirement that the Virgin Islands Government receive "benefits in excess of $10,000 under a Federal program involving a grant, contract, subsidy, loan, guarantee, insurance, or other form of Federal assistance." 18 U.S.C. § 666(b).

### B. Unanimity Instruction

Barnes argues that the District Court committed plain error by not instructing the jury that "the conversion/misapplication value of $5,000 or more must be *unanimously* found to have been reached in the *same* one-year period when the more than $10,000 in benefits were received." Appellant's Br. at 49. Under plain error review, Barnes must show that the absence of such an instruction "affected the outcome of the district court proceedings." *United States v. Olano*, 507 U.S. 725, 734 (1993). Barnes fails to carry this burden.

7

The evidence against Barnes was overwhelming such that the introduction of a unanimity instruction would not have affected the outcome of the proceedings. At trial, the jury heard evidence that Barnes had overbilled the VICCC by charging a per-attendee fee for training fictitious attendees who did not appear on training sign-in sheets. The jury also heard that the "final number of overbilling that occurred in fiscal year 2016" was $29,500. JA2180. Lastly, the jury heard that "in 2016 . . . the federal government provide[d] more than $10,000 . . . for grants to the Virgin Islands Government." JA1355. In concert, this evidence straightforwardly indicates that more than $5,000 was converted in the same one-year period when more than $10,000 in benefits were received.

Barnes argues against this conclusion, contending that "prejudice was caused because the evidence showed that Barnes['] contracts with the Commission were legitimate business transactions under which she provided significant and valuable services." Appellant's Br. at 53-54. But the jury clearly did not credit Barnes' denial of overbilling, and the provision of training to non-existent attendees is plainly not a significant or valuable service.

Because Barnes has failed to show that any error in the lack of a unanimity instruction affected the outcome of the proceeding, we find no plain error.

*C. Barnes' Sentence*

Lastly, Barnes argues that her sentence was procedurally unreasonable because the District Court committed plain error in not "credit[ing] Barnes for the value of the services she rendered," and "consider[ing] all payments received as 'loss' although § 666(d) excludes bona fide compensation paid in the usual course of business." Appellant's Br. at

8

55. Specifically, Barnes takes issue with her presentence investigation report ("PSR"), which "determined that Count 5 'loss' was $635,554 under § 2B1.1(b)(1)(H) of the Guidelines[,] adding a 14-level enhancement." *Id.* at 56. But the District Court did not agree with the PSR's loss calculation, and instead "calculated a total loss amount of $282,315.68." Sentencing Tr. 23, D.V.I. ECF No. 524. In reaching this total loss amount, the District Court "specifically did not include the payments for her" that were made in exchange for the training services she provided. *Id.* Because Barnes has failed to even identify a purported error by the District Court, and because any error in the PSR's rejected loss calculation is not imputed to the District Court, we do not find that Barnes' sentence was procedurally unreasonable.

## III. Conclusion

For the reasons set forth above, we will affirm Barnes' conviction and sentence.

9